Albert KORGEL and Margaret
Korgel, Appellants,

v.

UNITED STATES of America, Appellee.

No. 79–1310.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 6, 1979.

Decided April 21, 1980.

Jon R. Kerian, Bosard, McCutcheon, Kerian, Schmidt, Holum & Rau, Minot, N. D., filed brief for appellant.

James R. Britton, U. S. Atty., and Herbert A. Becker, Asst. U. S. Atty., Fargo, N. D., filed brief for appellee.

Before GIBSON, Chief Judge,* and STEPHENSON and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Plaintiffs-appellants brought suit in the United States District Court for the District of North Dakota under the Federal Tort Claims Act (FTCA) for flooding allegedly caused by the government's construction and operation of the Minot Air Force Base in North Dakota. At the close of the plain-

* The Honorable Floyd R. Gibson was Chief Judge of the Eighth Circuit at the time this case was submitted and took senior status on December 31, 1979, before the opinion was filed.

tiffs' case defendant moved to dismiss on the ground that the statute of limitations contained in the FTCA barred recovery. The court granted the motion and plaintiffs appeal. We affirm.

## I.

The present controversy stems from the flooding of approximately 360 acres of plaintiffs' farmland following the start of construction on the Minot Air Force Base which is located a mile and a half north of the plaintiffs' land. The flooding apparently occurred because of the surcharging of ground waters by the construction and operation of the Air Force Base. As the district court explained, the runoff from the construction of concrete sidewalks, streets and runways together with the daily use of over a million gallons of water caused an impervious curtain or "slug" of water to saturate the area below the Minot Air Force Base. This in turn blocked the flow of water in subsurface channels. As a result of this impediment, the water table rose and this caused water to collect on the Korgels' land.

Although the Korgels' land was lower than the lowest point available for much of the water to escape on the surface, prior to construction of the base water had always drained off the Korgels' property through subsurface outlets. Even when the Korgels' land was flooded by heavy precipitation from 1950–53, the land was still useful for farming by 1954. But the flood waters caused by the Air Force Base surcharging did not materially recede from the time they first impounded on the plaintiffs' land in 1969.[1]

It was not until October, 1976, however, that the plaintiffs took any action. On October 7, 1976 plaintiffs filed a damage claim with the Department of the Air Force for damages in the amount of $600,000.00.[2] Because the Air Force did not act on their claim, they filed suit against the United States on August 5, 1977 under the FTCA, 28 U.S.C. §§ 1346(b), 2671 et seq., claiming damages in the amount of $350,000.00 for negligently and wrongfully causing water to impound upon their land. Trial commenced in January of 1979, but the case was dismissed because the district court found the plaintiffs' cause of action accrued in 1969 and under the applicable statute of limitations, 28 U.S.C. § 2401(b), the suit was not timely filed. 28 U.S.C. § 2401(b) provides:

> (a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

Compliance with § 2675(a) procedures is an absolute prerequisite to maintenance of an action under the FTCA. *Lunsford v. United States*, 570 F.2d 221, 224 (8th Cir. 1977).

---

1. Plaintiffs' expert witness testified that the flooding of plaintiffs' land, in actuality, recurred annually. Describing the expert's testimony, the district court said:

   According to the Plaintiffs' expert, there is an annual recurring combination of factors which cause a new flooding on the Korgel property annually. The 62 'square miles drain from the northwest to a point just south of the Minot Air Force Base and north of Korgels' property. In addition to the surface runoff, there is subterranean runoff that goes in the same basic general direction as the surface waters. This coalescence at a point south of the Air Force Base and north of the Korgel property cannot go further north into a creek as it used to do prior to the construction of the air base because of the construction of the air base and its interference with surface and ground water movement annually recreates the flooding of the Korgel land.

2. Pursuant to 28 U.S.C. § 2675(a), as amended, the Korgels first presented their claim to the Department of the Air Force before bringing suit in federal court. 28 U.S.C. § 2675(a), as amended, provides:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

## II.

On appeal plaintiffs first argue that 28 U.S.C. § 2401(b) is inapplicable where, as in the present case, there has been a taking of real property for which the fifth amendment of the Constitution requires compensation.

██ Plaintiffs' argument, however, is badly flawed; the plaintiffs did not advance nor could they have advanced this nontort claim in the district court,[3] *Lenoir v. Porters Creek Watershed Dist.*, 586 F.2d 1081, 1087–88 (6th Cir. 1978); *Sherar v. Harless*, 561 F.2d 791, 794 (9th Cir. 1977); *Myers v. United States*, 323 F.2d 580, 583 (9th Cir. 1963), and it is established that a reviewing court will generally consider a case only on the theory upon which it was tried in the trial court.

## III.

Plaintiffs additionally argue that even if § 2401(b) does apply to the present case, the statute of limitations had not run at the time they brought suit. Plaintiffs contend that this case involves a continuing trespass because new flooding occurs annually, and thus they had a new cause of action each year and are at least entitled to recover for injuries subsequent to October 7, 1976. Furthermore, plaintiffs claim that even if they cannot bring successive lawsuits, their single cause of action did not accrue, as the district court concluded, in 1969.

██ We are not persuaded by plaintiffs' arguments. As to plaintiffs' contention that the statute of limitations had not run because the flooding was a continuing trespass, we note that where all damages both past and future can be presently estimated and recovered in one action, successive action cannot be brought for recurring or continuing damages. *Rygg v. United States*, 334 F.Supp. 219 (D.N.D.1971). *Cf. United States v. Dickinson*, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947); *Konecny v. United States*, 388 F.2d 59, 65 (8th Cir. 1967). *See generally* 54 C.J.S. Limitations of Actions § 169, p. 128. Because the flood waters had not materially receded since they impounded on the Korgels' farmland and caused a permanent injury of a direct and complete character, we conclude that the Korgels did not have a new cause of action each year.

██ We are also unconvinced by plaintiffs' claim that they did not, and in the exercise of reasonable diligence, could not have discovered they had a cause of action until many years after the time of the initial flooding in 1969.

We note that it is questionable whether the test in the instant case to determine when the cause of action accrues depends on claimants' awareness of a cause of action. A similar test was rejected by the Supreme Court in the medical malpractice context, *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the area in which courts have typically shown the greatest willingness to extend the limitations period. *Id.* 100 S.Ct. at 358 n.7. It thus seems doubtful that we should take the liberty in this case to extend the general rule that a tort claim accrues at the time of the plaintiff's injury. *Id.* at 359; *Rygg v. United States, supra*, 334 F.Supp. at 221.[4]

---

3. Under 28 U.S.C. § 1346(a)(2) the district court would only have had jurisdiction of this claim against the United States founded upon the Constitution if the claim did not exceed $10,000.00. Here, the plaintiffs claimed damages in the amount of $350,000.00.

4. In the context of tort claims for seepage of water or oil, courts have typically concluded that the cause of action accrues from the date of the injury or from the date on which the injury became apparent or discoverable by due diligence. *Maher v. Cities Service Pipe Line Co.*, 286 F.2d 313 (10th Cir. 1960). *See gener-*

But even in applying plaintiffs' test to the present case, it is clear that the plaintiffs still fail to establish a timely claim. After carefully reviewing the record, we are convinced that plaintiffs did discover, or in the exercise of reasonable diligence, could have discovered they had a cause of action more than two years prior to October 7, 1976, the date when the suit was commenced. We note that by 1974 the Korgels' valuable farmland had been inundated for approximately five years and the flood waters had not materially receded during this period. Further, it had become common knowledge in the area that the Air Force Base operation was responsible for the flooding. In light of these facts, we find it incredible that the Korgels could not discover they had a cause of action until almost five years after the flood waters first impounded upon their land.

Affirmed.

*ally* 54 C.J.S. Limitations of Actions § 173. We, however, decline to provide an all-purpose test to determine when a cause of action accrues triggering a statute of limitations. As the Supreme Court has noted: "One of the most theory-ridden of legal concepts is a 'cause of action.' This Court has recognized its 'shifting meanings' and the danger of determining rights based upon definitions of 'a cause of action' unrelated to the function which the concept serves in a particular situation." *United States v. Dickinson, supra,* 331 U.S. at 748, 67 S.Ct. at 1385. *See also United States v. Memphis Cotton Oil Co.,* 288 U.S. 62, 67, 53 S.Ct. 278, 280, 77 L.Ed. 619 (1933); *Winston Bros. Co. v. United States,* 371 F.Supp. 130, 134 (D.Minn.1973).