**Elaine MITTLEMAN, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF the TREASURY, et al., Defendants.**

**Elaine MITTLEMAN, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Civil Action Nos. 86–1852, 92–1741.**

United States District Court, D. Columbia.

Aug. 28, 1995.

that the decision to file under the name Cunningham was innocently made.

**464**

Elaine Mittleman, Falls Church, VA, pro se.

Thomas S. Rees, Mark E. Nagle, Asst. U.S. Attys., U.S. Attorney's Office, Washington, DC, for Defendants.

## OPINION

HARRIS, District Judge.

The following motions are pending before the Court in Civil Action No. 86–1852:[1]

1. Defendant United States' Motion To Dismiss the Amended Complaint;

2. Defendant Secret Service's Motion To Dismiss or, in the Alternative, for Summary Judgment;

3. Defendant Office of Special Counsel's Motion for Partial Summary Judgment;

4. Defendant Treasury's Motion To Dismiss in Part or, in the Alternative, for Partial Summary Judgment;

5. Plaintiff's Motion To Show Cause Why the Secret Service Has Not Produced the Original Versions of the Documents At Issue and Why the Secret Service Is Without Knowledge of the Existence or Location of the Original Versions;

6. Plaintiff's Motion for a Declaratory Judgment that the Creation, Maintenance, and Reliance upon the November 19, 1980, Secret Service Memorandum Are Violations of Her Fifth Amendment Rights;

7. Plaintiff's Motion for a Declaratory Judgment that Her First and Fifth Amendment Rights Were Violated in Light of the Supreme Court Decision in *Waters v. Churchill;*

8. Plaintiff's Motion for a Declaratory Judgment that the Passage of the Whistleblower Protection Act of 1989 Shows Congressional Intent that Whistleblowers Receive Protection;

9. Plaintiff's Motion for Declaratory Judgment that the Actions of the Office of Special Counsel Not Be Preclusive of Plaintiff's Claims;

10. Plaintiff's Motion for Declaratory Judgment that Defendants Failed to Comply with Procedures and Regulations in Performing the OPM Background Investigation;

11. Plaintiff's Motion for Reconsideration of the 1991 Ruling that the Privacy Act Precludes Review under the Constitution and the Administrative Procedure Act;

12. Plaintiff's Motion for Reconsideration of the *Bivens* Claim against Roger C. Altman in light of the Treasury Inspector General's Report and Developments Since the 1991 Opinion;

13. Plaintiff's Motion for Reconsideration Concerning the 1986 Privacy Act Amendment Request to the OPM;

14. Plaintiff's Motion for Reconsideration of Ruling that Privacy Act Amendment of the Treasury Inspector General Report Is Barred by the Statute of Limitations;

15. Plaintiff's Motion for Sanctions; and

16. Defendant's Motion for a Stay of All Proceedings on Plaintiff's Motions for Reconsideration and Motions for Declaratory Judgment.

Three of plaintiff's motion for declaratory judgments have not been fully briefed (Nos. 8, 9, and 10), and plaintiff's motions for reconsideration also have not been fully briefed. However, after reviewing those motions and independently researching the is-

1. For ease of reference, the Court refers to the Office of Personnel and Management as the OPM; the Office of Special Counsel as the OSC; and the Treasury Inspector General as the IG.

sues raised, and in light of the abundance of briefs in this case, the Court has determined that it is able to rule on those motions without further briefing.

Also pending before the Court in Civil Action No. 92–1741 is defendant United States' motion to dismiss. Civil Action No. 92–1741 and 86–1852 arise out of the same facts, and raise substantially the same legal claims against defendant United States. Not surprisingly, the United States' motion to dismiss is also substantially the same. Accordingly, the Court resolves the motion to dismiss in No. 92–1741 in this Opinion.

Upon consideration of the entire record, the Court grants the United States' motions to dismiss; grants the OSC's motion for partial summary judgment; and grants the Treasury's motion for partial summary judgment. The Court denies the Secret Service's motion to dismiss or, in the alternative, for summary judgment; denies plaintiff's motion to show cause regarding the Secret Service documents; denies plaintiff's motion for declaratory judgment against the Secret Service; and denies plaintiff's motion for sanctions against the Secret Service. The Court also denies plaintiff's other motions for declaratory judgment and plaintiff's motions for reconsideration. Accordingly, defendants' motion for a stay of proceedings (which was filed due to the voluminous nature of plaintiff's motions) is denied as moot. Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56," the Court nonetheless sets forth its analysis. See Fed.R.Civ.P. 52(a).

### Background

Plaintiff is an attorney who is proceeding *pro se.* The factual background of the case, as alleged by plaintiff, is set forth in the earlier Opinion issued in Civil Action No. 86–1852. See *Mittleman v. United States Treasury,* 773 F.Supp. 442 (D.D.C.1991) (hereinafter *Mittleman I* ). To briefly review, plaintiff, a former government employee, was terminated from her employment with the Department of the Treasury's Chrysler Loan Guarantee Board in mid-December of 1980, effective the following January. Shortly after the notification of termination, plaintiff

asked the Treasury Inspector General's office to investigate concerns she had about Treasury's monitoring of the Chrysler Corporation. She also filed a complaint about her termination, which plaintiff believed to be retaliatory, with the Office of Special Counsel. The IG's office ultimately generated a report which did not support plaintiff's concerns and, to plaintiff's surprise, cast plaintiff in a negative light. The OSC closed out plaintiff's case on November 12, 1981, finding no improprieties in Treasury's termination of plaintiff.

In 1982, plaintiff applied for a job with the Department of Commerce in the International Trade Administration Section. Although plaintiff was selected for the job, she ultimately was denied the position because a background investigation conducted by the OPM resulted in the denial of a security clearance, which was necessary for the position. The denial appeared to be caused, at least in part, by allegations of misconduct and incompetence concerning plaintiff in the IG's report. Plaintiff learned of the accusations against her, at the latest, on July 6, 1983, when she received a redacted copy of the OPM's investigative report. Plaintiff commenced her first lawsuit on June 30, 1986.

By Opinion dated August 29, 1991 ("1991 Opinion"), the Court dismissed most of the claims raised in plaintiff's complaint and first amended complaint. *Mittleman I,* 773 F.Supp. 442. The Court, *inter alia,* dismissed plaintiff's tort claims against the United States for lack of jurisdiction because plaintiff had failed to exhaust her administrative remedies. The only claims remaining were plaintiff's Privacy Act claims arising out of:

(1) the 1985 IG report distribution list which plaintiff alleges was incomplete, (2) the alleged disclosures to [columnist] Jack Anderson, (3) the alleged 1986 disclosures to [author] John Donahue, and (4) the Secret Service's exemption of plaintiff's file from the Privacy Act provisions.

*Mittleman I,* 773 F.Supp. at 454. Subsequently, plaintiff exhausted her administrative remedies under the Federal Tort Claims Act ("FTCA") and requested leave to file an

amended complaint reasserting her tort claims, which was granted as unopposed on August 27, 1992.[2] Contemporaneously, plaintiff filed a separate civil action raising substantially the same claims against the United States, apparently out of an abundance of caution in seeking to protect all of her tort claims. Each of plaintiff's Privacy Act claims as well as her FTCA claims are now the subject of a dispositive motion. Additionally, plaintiff has filed several motions for declaratory judgment and motions for reconsideration in an apparent attempt to evade the impact of the Court's 1991 rulings and revive the claims which were dismissed.

## Discussion

### I.  The Federal Tort Claims Act

In No. 86–1852, plaintiff characterizes her tort claims as "breach of an implied covenant of good faith and fair dealing and a wrongful discharge, denial of employment, and other acts in violation of public policy ... [and] intentional interference with plaintiff's pursuit of her legal career and profession, and intentional interference with plaintiff's pursuit of a particular job, and professional and business associations and relationships." Amended Complaint ¶¶ 121–22. In No. 92–1741, plaintiff characterizes her tort claims—based on the same set of facts—as intentional infliction of emotional distress, false light invasion of privacy, and negligence.

■ Plaintiff's claims are barred by the two-year limitations period applicable to claims brought under the FTCA. Section 2401(b) states:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues....

28 U.S.C. § 2401(b). Plaintiff's claim accrued, at the latest, on July 6, 1983, when she received a copy of the OPM's background report. Plaintiff did not file her first complaint until June 30, 1986—almost three years later.

■ Plaintiff's contention that the applicable statute of limitations is the three-year limitations period under D.C.Code § 12–301(8) is baseless. The federal two-year limitations period prevails over local law. *See Miller v. United States,* 932 F.2d 301, 303 (4th Cir.1991) ("state law determines whether there is an underlying cause of action; but federal law defines the limitations period."); *see also United States v. Kubrick,* 444 U.S. 111, 115–19, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979) (discussing the FTCA's two-year limitations period).

■ Plaintiff's attempt to save her untimely claims in No. 92–1741 by invoking 28 U.S.C. § 2679(d) is unavailing. This provision essentially is "a relation-back provision applicable where the Government ... substitutes [itself] for an individual defendant in an ongoing court suit" that was timely filed as against the individual defendant. *See Logan v. United States,* 851 F.Supp. 704, 707 (D.Md. 1994). Where such substitution is made after commencement of the case, § 2679(d) deems the claim timely where, *inter alia,* "the claim would have been timely had it been filed on the date the underlying civil action was commenced." 28 U.S.C. § 2679(d)(5)(A). As previously stated, the claims in the "underlying civil action"—No. 86–1852—are untimely; therefore, "relation back" of the 1992 claims to the 1986 complaint does not save them.

■ Plaintiff's attempts to excuse the untimeliness of her claims under the doctrine of fraudulent concealment and the continuing tort doctrine are equally unavailing. By plaintiff's own admission, she received a copy of the OPM's background report on July 6, 1983, and was on actual notice of the alleged falsities therein at that time. Therefore, the doctrine of fraudulent concealment is not applicable.

■ The continuing tort doctrine applies only where " 'no single incident in a continuous chain of tortious activity can fairly or realistically be identified as the cause of sig-

---

**2.**  At that time, defendants responded that they did not oppose amendment of the complaint "provided that it is clear that the new common-law claims are asserted only against the United States," and emphasized that "we take this position ... without prejudice to any defenses that might be available with respect to these new claims."

nificant harm.'" *Rochon v. Federal Bureau of Investigation,* 691 F.Supp. 1548, 1563 (D.D.C.1988). Here, however, plaintiff complains of distinct acts that occurred prior to 1984: false statements in the IG report and other memoranda—which were incorporated into the OPM background report—that allegedly caused her to be fired from the Department of Treasury in 1981 and not hired by the Department of Commerce in 1983. The fact that she may continue to suffer damages does not transform the alleged wrongful conduct into a continuing tort. *See Korgel v. United States,* 619 F.2d 16, 18 (8th Cir.1980); *cf. Daboub v. Gibbons,* 42 F.3d 285 (5th Cir. 1995) (distinguishing continuing damages from continuing tort, and noting that application of a continuing damages theory would eviscerate the statute of limitations in the copyright context). Accordingly, the Court grants the United States' motions to dismiss in No. 86–1852 and No. 92–1741.

## II. The Privacy Act

### A. The Secret Service

■ The only claim remaining against the Secret Service is based on its position that the Privacy Act does not apply to plaintiff's file—in particular, a memorandum bearing the date November 19, 1980. The memorandum purports to describe an incident in which plaintiff was found in Roger C. Altman's office. Plaintiff contends that the memorandum contains inaccuracies, and was created in 1981 but postdated to November 19, 1980.

The Secret Service initially took the position—supported by the declaration of Melvin Laska, a Freedom of Information and Privacy Act officer in the Secret Service—that the documents at issue pertained to the Secret Service's investigation of plaintiff's activities at the Department of Treasury in late 1980 and had become part of the Non–Criminal Investigation Information System, which is exempt under 5 U.S.C. § 552a(k)(2). In December 1993, the Secret Service changed its position and stated that the documents are not part of the Non–Criminal Investigation Information System or any other investigative file exempt under § 552a(k)(2). However, the Secret Service continues to maintain

that plaintiff's claim should be dismissed on the ground that the documents are maintained in a file that does not bear plaintiff's name or other personal identifier, and therefore is not part of a "system of records" within the meaning of the Privacy Act. It describes the file as "a compilation of memoranda, correspondence, and other documentation about various incidents reported in connection with the performance of duties of the Treasury Security Force." This change in position, however, at least thus far has not been supported by affidavit or other evidence. Because of the conflicting positions taken by the Secret Service, the Court finds that there is a genuine issue of material fact regarding the file or files in which the documents at issue are located. However, the record does not indicate, as plaintiff contends, that the Secret Service has acted in bad faith. Accordingly, the Secret Service's motion to dismiss or, in the alternative, for summary judgment, is denied. Plaintiff's motion to show cause regarding the Secret Service documents and motion for sanctions against the Secret Service also are denied.

■ Relatedly, plaintiff has moved for a declaratory judgment that the creation, maintenance, and reliance upon the November 19, 1980, Secret Service memorandum are violations of her Fifth Amendment rights. Although relief is not available to plaintiff under the Declaratory Judgment Act, *see infra,* to the extent plaintiff seeks injunctive relief, the Court entertains this motion. This Circuit has held that, if an issue can be resolved on statutory grounds without reaching the constitutional question, the Court should rule on the statutory grounds. *See Hobson v. Wilson,* 737 F.2d 1, 65–66 (D.C.Cir.1984) (directing the district court first to consider whether plaintiff was entitled to relief under the Privacy Act, and, if the Act did not provide relief, directing consideration of whether relief was available under the Constitution), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985); *see also Dickson v. Office of Personnel Management,* 828 F.2d 32, 41 (D.C.Cir. 1987) (indicating that this Circuit has not resolved the issue of whether the Privacy Act defines the scope of remedies available under

the Constitution). Because redress for the alleged falsity of these documents may be available under the Privacy Act, and the Court has not yet determined whether these documents are subject to the requirements of the Privacy Act, the Court denies plaintiff's motion. If the Court finds that the Privacy Act does not apply, the Court then will consider whether equitable relief is available to plaintiff. *See Hubbard v. Environmental Protection Agency*, 809 F.2d 1, 11 (D.C.Cir. 1986) ("*Bush* only precludes damage claims against individuals, not equitable claims against agencies"). To the extent that plaintiff's motion seeks damages, the 1991 Opinion makes clear that these claims are dismissed: "Plaintiff's constitutional damage claims relating to disclosures of [allegedly] false information in plaintiff's records ... are precluded by the Privacy Act." *Mittleman I*, 773 F.Supp. at 454 (citing *Bush v. Lucas*, 462 U.S. 367, 376–78, 103 S.Ct. 2404, 2411, 76 L.Ed.2d 648 (1983)). The Court denies plaintiff's request to reconsider this ruling.

### B. Office of Special Counsel

▆ The only claim remaining against the OSC is the Privacy Act claim alleging that an OSC spokesperson disclosed information from plaintiff's records to a reporter, Stewart Harris, associated with newspaper columnist Jack Anderson. Specifically, plaintiff alleges that an OSC spokesperson made disclosures regarding plaintiff that appeared in a *Washington Post* article. *See* Jack Anderson, *Whistleblowers Fall on Hard Times*, WASH.POST, May 12, 1986, at B11.

The Privacy Act, with some exceptions, generally prohibits disclosure of information about an individual that is contained in a system of records. 5 U.S.C. § 552a(b). Of course, if there has been no such disclosure, then there is no issue under the Privacy Act. The dispute between plaintiff and the OSC centers on whether in fact an OSC representative disclosed information from plaintiff's records to a newspaper reporter. The undisputed relevant evidence indicates that the OSC did not. Accordingly, the OSC's motion for summary judgment is granted.

First, the record shows that Shigeki J. Sugiyama and Kenneth Barber—OSC employees who worked on plaintiff's OSC complaint—did not disclose any information regarding plaintiff to any newspaper reporter. Indeed, plaintiff agrees that it is "extremely doubtful" that these persons would have spoken to a reporter. *See* Plaintiff's Opp. at 2 (filed Apr. 7, 1995). It also indicates that Alma Hepner, another OSC employee, was the only OSC employee to talk to Harris regarding the article. Moreover, documents proffered by plaintiff—a letter dated August 20, 1986, ..om Harris to Mittleman, and the article itself—show that Hepner made only statements regarding general provisions of law and that Hepner did not make any statements about plaintiff's file in particular. Harris's letter to Mittleman states:

> Hepner and I talked in her office for about 30 minutes. During that interview, Hepner explained that the Office of Special Counsel is not bound by the same tenets of confidentiality that clients enjoy with their personal attorneys. Hepner explained that, under current regulations, the [OSC] was required to answer questions asked by the [OPM] investigator.

Ex. C to Plaintiff's Supplemental Mem. (filed Apr. 28, 1995). This information is reflected in the *Post* article:

> As a spokesman for the Office of Special Counsel explained, the official who relayed the charge against Mittleman [to OPM] was required by law to answer inquiries from the personnel agency [OPM]; Special Counsel attorneys and their clients do not have the confidentiality that covers other attorney-client relationships.

Ex. C to Plaintiff's Opp. (filed Apr. 7, 1995). Thus, the undisputed evidence of record reveals that only a statement of general provisions of law was made to Anderson's staff—not a disclosure of information retained in the OSC's records on plaintiff. Such a statement of general provisions of law does not implicate the general nondisclosure provisions of the Privacy Act.

### C. The Department of the Treasury

▆ The claims remaining against the Department of the Treasury also arise under the Privacy Act. Plaintiff alleges: (1) that the list of individuals to whom the Treasury

IG's report has been distributed is incomplete; she seeks a complete accounting of disclosures; and (2) that Michael Driggs, a former Treasury employee, made unauthorized disclosures to author John Donahue in 1986, which were published in the book *New Deals, the Chrysler Revival and the American System.* Treasury moves for summary judgment on the grounds that the IG's report is exempt from the accounting-of-disclosures provision, *see* 5 U.S.C. § 552a(c), and that the statements that Driggs allegedly made to Donahue are beyond the reach of the Privacy Act. The Court agrees.

The Treasury IG's report is part of a system of records that has been exempted under § 552a(j) and (k)(2) from the accounting-of-disclosures provision pursuant to regulations promulgated under the authority of the Secretary of the Treasury, in accordance with the procedural requirements of the Privacy Act. *See* Declaration of John L. Horn (filed Sept. 11, 1991). Specifically, it is part of the General Allegations and Investigative Records System—Treasury/OS, which Treasury's Office of Inspector General exempted because, *inter alia*, application of the accounting-of-disclosures provision to this system of records would alert the subject to the existence of an investigation, possibly resulting in hindrance of an investigation.[3] *Id.*; 31 C.F.R. § 1.36 (1994).[4]

The agency's application of exemption (k)(2) to the IG report is valid. Exemption (k)(2) generally permits the exemption of "investigatory material compiled for law enforcement purposes." This exemption applies to records compiled for internal administrative investigations, such as investigations of personnel grievances against their supervisors. *Frank v. United States Dep't of Justice,* 480 F.Supp. 596, 597 (D.D.C.1979). The

IG's report pertains to plaintiff's grievance against Treasury officials and related matters, and thus falls squarely within the reach of exemption (k)(2). Accordingly, Treasury's motion for summary judgment on the issue of the IG Report is granted.

■ With respect to Driggs's alleged unauthorized disclosures to Donahue, the evidence of record, construed in the light most favorable to plaintiff, indicates that Driggs was interviewed by Donahue. However, the excerpts of the book that plaintiff has highlighted contain no references to plaintiff. Thus, there is an absence of evidence indicating that Driggs disclosed information about plaintiff to Donahue, as plaintiff alleges. On this basis alone, summary judgment for Treasury is appropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 321–25, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (movant is entitled to summary judgment when the nonmoving party has failed to make a sufficient showing on element on which she will bear burden of proof).

■ Assuming *arguendo* that Driggs did convey information about plaintiff to Donahue, namely, that plaintiff had leaked information to the press, this disclosure is not subject to the restrictions of the Privacy Act because it was a belief that Driggs derived from conversations with his superiors and which was acquired independent from a system of records. *See Thomas v. United States Dep't of Energy,* 719 F.2d 342, 344–46 (10th Cir.1983). Accordingly, Treasury's motion for summary judgment on the issue of Driggs's alleged disclosure is granted.[5]

### III. Declaratory Judgment Act

■ Plaintiff has filed several motions for declaratory judgment in an apparent at-

---

**3.** The Court is aware that plaintiff vehemently objects to the use of the term "investigation" to apply to Treasury's inquiries into plaintiff's claims, because of what she perceives to be the negative connotations associated with the term. Plaintiff's objections appear to be based on a misunderstanding of the term. In any event, the term is a fair characterization of Treasury's inquiries into plaintiff's claims.

**4.** This exemption has applied to the IG report since 1981. *See* Declaration of John L. Horn ¶ 4

(filed Dec. 11, 1991). The exemption remains in effect to this day. 31 C.F.R. § 1.36 (1994).

**5.** Although plaintiff attempts to cast doubt on the veracity of the Driggs declaration, plaintiff has not come forward with any evidence indicating that Driggs did not derive this information from his superiors or that he derived this information from a Privacy Act system of records. Therefore, this matter is appropriate for summary judgment. *See Celotex,* 477 U.S. at 321–25, 106 S.Ct. at 2552–53.

tempt to avoid the dismissal of most of her claims in the Court's 1991 Opinion. *See supra* at 2. The decision to entertain a claim under the Declaratory Judgment Act, 28 U.S.C. 2201(a), is committed to the discretion of the district court, even when the suit otherwise satisfies jurisdictional prerequisites. *Wilton v. Seven Falls Co.,* —— U.S. ——, ——, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995). Qualifying litigants are not entitled to seek relief under the Act; rather, the district court is to determine in its discretion whether the litigant's claim is appropriate for a declaratory judgment. *Id.* at ——, 115 S.Ct. at 2143. The factors bearing on the granting of declaratory judgment include:

> whether [declaratory relief] would finally settle the controversy between the parties; whether other remedies are available or other proceedings pending; the convenience of the parties; the equity of the conduct of the declaratory judgment plaintiff; prevention of "procedural fencing"; the state of the record; the degree of adverseness between the parties; and the public importance of the question to be decided.

*Jackson v. Culinary Sch. of Washington, Ltd.,* 27 F.3d 573, 580 (D.C.Cir.1994) (quoting *Hanes Corp. v. Millard,* 531 F.2d 585 (D.C.Cir.1976)), *vacated on other grounds,* —— U.S. ——, 115 S.Ct. 2573, 132 L.Ed.2d 824 (1995). Weighing these factors, the Court holds that declaratory judgment is not appropriate in the circumstances of this case. First, there are other comprehensive statutory schemes that address the issues raised by plaintiff—in fact, plaintiff has brought claims under those statutes which include the Privacy Act, the Freedom of Information Act, and the FTCA, most of which were dismissed as time-barred or for failure to exhaust administrative remedies. The fact that the remedies under those statutes

are now unavailable to plaintiff is a result of her own actions. Additionally, as this Court noted in the 1991 Opinion, the Civil Service Reform Act has been found to be a comprehensive statutory scheme which provides aggrieved federal employees with meaningful remedies for constitutional violations, precluding federal courts from creating *Bivens* remedies. *See Mittleman I,* 773 F.Supp. at 453 (citing *Bush,* 462 U.S. at 367, 103 S.Ct. at 2404). Where, as here, comprehensive statutory schemes offer meaningful relief and those remedies have become unavailable because of expiration of the statute of limitations or failure to exhaust administrative remedies, declaratory judgment is not appropriate. Accordingly, plaintiff's motions for various forms of declaratory judgment are denied.[6]

### IV. Plaintiff's Motions for Reconsideration

■ Finally, the Court has reviewed plaintiff's motions for reconsideration. None of the arguments raised therein warrants modification of the rulings in the 1991 Opinion. Plaintiff's motions rehash arguments previously rejected and do not cite any intervening changes in controlling law. *See Natural Resources Defense Council v. United States Environmental Protection Agency,* 705 F.Supp. 698 (D.D.C.1989) (quoting *All Hawaii Tours v. Polynesian Cultural Ctr.,* 116 F.R.D. 645, 649 (D.Haw.1987)), *vacated on other grounds,* 707 F.Supp. 3 (D.D.C. 1989).

### Conclusion

Upon consideration of the foregoing, the Court grants the United States' motions to dismiss; grants the OSC's motion for partial summary judgment; and grants the United States Treasury's motion for partial summary judgment. The Court denies the Secret Service's motion to dismiss or, in the

---

**6.** Plaintiff premises one of her motions for declaratory judgment on a recent Supreme Court case, *Waters v. Churchill,* —— U.S. ——, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994). That case did not effect a change in the law relevant to plaintiff's case. Specifically, *Waters* involved a First Amendment claim raised by a local government employee under 42 U.S.C. 1983. This Court previously has noted that federal employees pursuing a constitutional damages claim stand in a

different stead because of the applicability of the Civil Service Reform Act. *See Mittleman I,* 773 F.Supp. at 453; *see also Hubbard v. Environmental Protection Agency,* 982 F.2d 531, 532 n. 1 (D.C.Cir.1992) (confirming that a federal employee's constitutional damages claim could not proceed where CSRA provided meaningful remedy). Accordingly, *Waters* does not alter the Court's earlier ruling on plaintiff's First Amendment claim.

alternative, for summary judgment; denies plaintiff's motion to show cause regarding the Secret Service documents; denies plaintiff's motion for declaratory judgment against the Secret Service; and denies plaintiff's motion for sanctions against the Secret Service. Finally, the Court denies plaintiff's other motions for declaratory judgment and plaintiff's motions for reconsideration, and denies as moot defendants' motion for a stay of all proceedings.

In sum, all of plaintiff's claims are dismissed except for plaintiff's Privacy Act claim against the Secret Service. If the Court later determines that the Secret Service documents at issue are not covered by the Privacy Act, the Court then will reach the issue of whether plaintiff may pursue her claim against the Secret Service under the Constitution.

The Court admonishes plaintiff that attempts to relitigate the dismissed claims by filing "new" requests for relief styled as motions to show cause or motions for new declaratory judgment or for other different types of relief will not be tolerated. To the extent that plaintiff disagrees with the Court's rulings, she may raise the issues on appeal. A barrage of motions for relief on claims already dismissed unduly taxes the resources of the Court and of the defendants. To ensure that this does not happen again, the Court directs the parties to meet and confer on the one remaining Privacy Act claim against the Secret Service in Civil Action No. 86–1852, and to file a status report with the Court on how this remaining issue will be litigated, whether by dispositive motion or by hearing. In the event that one or both parties believes that this claim may be resolved by dispositive motion, the parties shall attempt to reach agreement on a briefing schedule.[7] The parties shall file a status report with the Court no later than September 29, 1995.

Appropriate Orders accompany this Opinion—one to be filed in Civil Action No. 86–

1852, and the other to be filed in Civil Action No. 92–1741.

### ORDER

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that Defendant United States' Motion To Dismiss the Amended Complaint is granted. It hereby further is

ORDERED, that Defendant Secret Service's Motion To Dismiss or, in the Alternative, for Summary Judgment is denied. It hereby further is

ORDERED, that Defendant Office of Special Counsel's Motion for Partial Summary Judgment is granted. It hereby further is

ORDERED, that Defendant United States Department of the Treasury's Motion for Partial Summary Judgment is granted. It hereby further is

ORDERED, that Plaintiff's Motion To Show Cause Why the Secret Service Has Not Produced the Original Versions of the Documents at Issue and Why the Secret Service Is Without Knowledge of the Existence or Location of the Original Versions is denied. It hereby further is

ORDERED, that Plaintiff's Motion for a Declaratory Judgment that the Creation, Maintenance, and Reliance upon the November 19, 1980, Secret Service Memorandum Are Violations of Her Fifth Amendment Rights is denied. It hereby further is

ORDERED, that Plaintiff's Motion for Sanctions Against the Secret Service is denied. It hereby further is

ORDERED, that Plaintiff's Motion for a Declaratory Judgment that Her First and Fifth Amendment Rights Were Violated in Light of the Supreme Court Decision in *Waters v. Churchill* is denied. It hereby further is

ORDERED, that Plaintiff's Motion for a Declaratory Judgment that the Passage of the Whistleblower Protection Act of 1989

---

7. The Court notes that plaintiff previously has sought an extraordinary number of extensions of time to oppose defendants' dispositive motions because she purportedly believed that resolution of the claims by dispositive motion was not possi-

ble. This response is inappropriate. To the extent that plaintiff believes that the remaining claim cannot be resolved by dispositive motion, she may raise her objections in an opposition pleading.

Shows Congressional Intent that Whistle-blowers Receive Protection is denied. It hereby further is

ORDERED, that Plaintiff's Motion for Declaratory Judgment that the Actions of the Office of Special Counsel Not Be Preclusive of Plaintiff's Claims is denied. It hereby further is

ORDERED, that Plaintiff's Motion for Declaratory Judgment that Defendants Failed To Comply with Procedures and Regulations in Performing the OPM Background Investigation is denied. It hereby further is

ORDERED, that Plaintiff's Motion for Reconsideration of the 1991 Ruling that the Privacy Act Precludes Review under the Constitution and the Administrative Procedure Act is denied. It hereby further is

ORDERED, that Plaintiff's Motion for Reconsideration of the *Bivens* Claim against Roger C. Altman in light of the Treasury IG Report and Developments Since the 1991 Opinion is denied. It hereby further is

ORDERED, that Plaintiff's Motion for Reconsideration Concerning the 1986 Privacy Act Amendment Request to the Office of Personnel Management is denied. It hereby further is

ORDERED, that Plaintiff's Motion for Reconsideration of Ruling that Privacy Act Amendment of the Treasury Inspector General Report Is Barred by the Statute of Limitations is denied. It hereby further is

ORDERED, that Defendants' for a Stay of All Proceedings is denied as moot. It hereby further is

ORDERED, that, no later than September 29, 1995, the parties shall file a status report with the Court discussing the matters required by the Opinion. It hereby further is

ORDERED, that the Clerk of the Court shall file the original of the accompanying Opinion in Civil Action No. 86–1852 and shall file a true copy of the Opinion in Civil Action No. 92–1741.

SO ORDERED.

*ORDER*

For the reasons stated in Part I of the accompanying Opinion, it hereby is

ORDERED, that defendant's motion to dismiss is granted.

SO ORDERED.