**Elaine MITTLEMAN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 95–5395.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 19, 1996.

Decided Jan. 10, 1997.

Elaine Mittleman, appearing pro se, argued the cause and filed the brief, for appellant.

Nancy R. Page, Assistant U.S. Attorney, argued the cause, for appellee. With her on the brief were Eric H. Holder, Jr., U.S. Attorney, R. Craig Lawrence and Mark E. Nagle, Assistant U.S. Attorneys. Michael T. Ambrosino, Assistant U.S. Attorney, Washington, DC, entered an appearance.

Before: WALD, WILLIAMS and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

We deal here with the United States's exhaustion defenses to several tort claims originally brought in 1986 against various government officials. The Federal Employees Liability and Reform Tort Compensation Act of 1988 (the "Westfall Act"), Pub.L. 100–694, 102 Stat. 4563, transformed these claims into ones against the United States under the Federal Torts Claims Act ("FTCA"). It thus subjected them to the FTCA's requirement that claims be initially presented to the responsible agency within two years after the claim accrued, and filed in court within six months after denial by the agency. See 28 U.S.C. § 2401(b); see also id. § 2675(a). Congress recognized that plaintiffs might suppose their claims to be against an individual government employee (as indeed they would still be if the employee had not been acting within the scope of his employment), and thus might fail to timely present their claims to the agency, so it fashioned special rules to account for the possibility. See 28 U.S.C. § 2679(d)(5). It also recognized that persons such as Mittleman, whose claims *antedated* the Westfall Act and originally did run against officials rather than the government, might be caught short by after-the-fact application of the FTCA's requirement of timely presentation; so it fashioned a transitional rule for that situation. See Pub.L. 100–694, § 8(d). Applying these rules to the present case, we find that the one claim whose boundaries are readily ascertainable was not timely presented even with the benefit of the special provisions; we affirm the district court's dismissal of that claim. The two remaining claims are not clear enough for us to apply the pertinent rules, and ac-

cordingly we remand the case for clarification and application of the controlling principles.

\*  \*  \*

In 1986 Elaine Mittleman sued several government officials in federal district court, alleging both statutory violations and torts in their conduct toward her between 1980 and 1983, first when she worked at the Treasury Department as part of the team handling the Chrysler bailout, and later when she was denied a job by the Commerce Department. Mittleman's complaint, in its several variations, essentially maintains that in retaliation for her raising questions about Chrysler, Treasury officials made false and damaging statements about her, and otherwise mistreated her, with the consequence that she had to leave her job, suffered emotional distress and was later denied employment at Commerce. See *Mittleman v. United States Treasury*, 773 F.Supp. 442 (D.D.C.1991) ("*Mittleman I*").

Congress's enactment of the Westfall Act rendered Mittleman's suit against the officials obsolete. The Act provided that the United States would be substituted as a party whenever a federal employee was sued for tortious acts occurring within the scope of his employment. See 28 U.S.C. § 2679(b) (making a lawsuit against the United States the exclusive remedy for such claims). Accordingly, on certification by the Attorney General that the officials had been acting within the scope of their employment, see 28 U.S.C. § 2679(d), the suit became one against United States under the FTCA. See *Mittleman I*, 773 F.Supp. at 454, 28 U.S.C. § 1346(b) (giving district courts exclusive jurisdiction over tort claims for money damages against the United States). Since Mittleman had not presented the tort claims to the various pertinent agencies as required by the FTCA, the district court dismissed them for want of jurisdiction. See *Mittleman I*, 773 F.Supp. at 454.

Following the dismissal, Mittleman presented her claims to the Treasury, the Secret Service, the Office of Personnel Management ("OPM"), and the Commerce Department. In 1992, after the several agencies denied the claims, she filed a new lawsuit against the

United States. She also amended the complaint filed in the 1986 suit. The district judge dismissed both the 1992 suit (which consisted entirely of tort claims), and the tort claims included in the 1986 suit. See *Mittleman v. United States Department of Treasury,* 919 F.Supp. 461, 466 (D.D.C.1995) (*"Mittleman II"*). Because of a still extant Privacy Act claim in the 1986 lawsuit, however, there is no final judgment in that suit, and both parties agree that only the 1992 action is before us.

* * *

■ As we have said, the FTCA requires that claims be presented to the agency in question within two years of accrual, and filed in court within six months after denial by the agency. See 28 U.S.C. § 2401(b); see also *id.* § 2675(a). A claim not so presented and filed is "forever barred." *Id.* § 2401(b).

Because substitution of the United States as a party might occur long after this two-year presentation period ran out, the Westfall Act contained a savings provision that creates a 60–day grace period for presentation to the agency for claims originally filed against an individual employee and then dismissed for want of presentation. 28 U.S.C. § 2679(d)(5) provides:

> (5) Whenever an action or proceeding in which the United States is substituted as the party defendant under this subsection is dismissed for failure first to present a claim pursuant to section 2675(a) of this title, such a claim shall be deemed to be timely presented under section 2401(b) of this title if—
>
> (A) the claim would have been timely had it been filed on the date the underlying civil action was commenced, and
>
> (B) the claim is presented to the appropriate Federal agency within 60 days after dismissal of the civil action.

28 U.S.C. § 2679(d)(5).

The district court considered this without regard to the Westfall Act's special transitional rule (discussed below). It construed subsection (A)'s timely filing requirement to mean that the claim against the individuals must have been filed in court within the two years allowed by the FTCA for presentation to the agency. See *Mittleman II,* 919 F.Supp. at 466.[1] When we bring the special transitional provision to bear on the analysis, it is apparent that the district court's reading of § 2679(d)(5)(A) was correct as a general matter, but that, for cases such as Mittleman's, where the cause or action accrued before passage of the Westfall Act, a special provision, § 8(d) of the Westfall Act, modifies the normal operation of § 2679(d)(5). Section 8(d) states:

> With respect to any civil action or proceeding to which the amendments made by this Act apply in which the claim accrued before the date of the enactment of this Act [November 18, 1988], the period during which the claim shall be deemed to be timely presented under section 2679(d)(5) ... shall be that period within which the claim could have been timely filed under applicable State law, but in no event shall such period exceed two years from the date of the enactment of this Act.

Westfall Act, Pub.L. 100–694, § 8(d), *reprinted in* 28 U.S.C.A. § 2679, "Historical and Statutory Notes" (1994).

The government reads this provision as having given individuals such as Mittleman a grace period of up to two years after the enactment of the Westfall Act to *present* any outstanding claims to the pertinent agencies. Since Mittleman did not present her claims until 1991, they argue, her suit should be dismissed regardless of whether the 1986 filing in court was timely as a matter of local law.

The difficulties with this view are twofold. First, as a pure matter of language § 8(d)'s words, "the period during which the claim shall be deemed to be timely presented *under § 2679(d)(5),*" appear to refer to the entirety of the necessary actions under § 2679(d)(5), including, first, commencement of the underlying civil action referred to in § 2679(d)(5)(A), with presentation to follow only in the 60–day grace period after dismissal. With that in mind, it appears that § 8(d) simply substitutes the state statute of

---

1. The parties do not reach, and we do not discuss, the effect of § 2401(a) (setting outer limit of six years after "the right of action first accrues" to file a lawsuit) on the Westfall Act's savings provision.

limitations for the two-year period prescribed by § 2401(b) as the applicable time limit for the initial court filing required by § 2679(d)(5)(A).

Moreover, the government's reading entails results as surprising as they are draconian. First, a plaintiff whose claim had long been pending in court before the Westfall Act could easily lose her chance to present the claim before the Act's passage, as the state statute of limitations could well have run in that interim (between the filing of suit and passage of the Westfall Act); yet she would have had no reason even to consider presenting her claim to the agency.[2] Similarly, where a suit against government employees was filed well before the running of the state statute of limitations, but had for one reason or another not been promptly dismissed after the substitution of the United States as defendant (as where substitution was disputed), the plaintiff would have to present her claim to the agencies *before* the dismissal referred to in § 2679(d)(5)(A). Of course the need to make a protective filing of that sort is not unthinkable, but it is hard to see why the transitional plaintiff should be *worse off* than one whose claim accrued after the Westfall Act and who would be free under § 2679(d)(5) to hold off presentation until 60 days after dismissal.

If the language compelled such results, of course, that would be an end to the issue. But, as we have seen, it does not. And the legislative history indicates an affirmative intention not to destroy claims on such grounds. See H.R.Rep. No. 100–700 at 7, 100th Cong., 2nd Sess. (1988), U.S. Code Cong. & Admin. News 1988 at 5945, 5951 ("Similarly, no one who has already initiated a suit will lose their claims solely because the procedural prerequisites associated with the FTCA are being made applicable.").

We note that under this reading § 8(d) dovetails nicely with § 2679(d)(5). The outer limit for filing suit for an accrued claim, two years after the enactment of the Westfall Act, matches the two years effectively required for filing suit under § 2679(d)(5)(A). The only difference is that for the transitional claim (accrued before enactment) the outer limit runs from the time of enactment, whereas for a claim not accrued as of enactment it runs from the accrual of the cause of action (which would necessarily be later).

Some of the language of § 8(d), to be sure, cuts against this reading. By stating that the relevant period when a claim will be considered timely "presented" is "that period within which the claim *could have been timely filed*" under applicable state law, the provision suggests that the deadline is not satisfied by the actual filing of suit, and thus, by default, can be satisfied only by presentation. But the perversities of such an interpretation appear to us to make the alternative reading—construing § 8(d) as establishing a special meaning for § 2679(d)(5)(A) for suits accrued before enactment—overwhelmingly more sensible.

■ Of course none of this even has potential to do Mittleman much good unless the "claim" set forth in the 1992 lawsuit is essentially the claim set forth in her 1991 presentations to the agencies and in her 1986 complaint—the "underlying civil action" to which § 2679(d)(5)(A) refers.[3] Mittleman's legal theories have varied rather radically, but we think these changes should not be relevant for purposes of relation back. Where the initial suit was filed in federal court, as here, presumably Mittleman could have responded to the dismissal, after administrative presentation and denial of her claims, with an amended complaint in the 1986 lawsuit. Instead she filed a whole new lawsuit. But that would invariably be true where the filing of the initial local law tort claim, the controlling step under § 2679(d)(5)(A), had been in state court; the replacement suit in federal court would necessarily be a new one. So we see no reason why the 1992 complaint should be judged, for relation back purposes, by harsher standards than would have applied

---

**2.** The government may be suggesting that § 8(d) allows presentation at any time up to two years after enactment, even if the state statute of limitations has run before. While such a reading is far less draconian, it suffers the even greater problem of totally defying § 8(d)'s language, which (whatever event it addresses) makes the

limit the *shorter* of the state statute or two years after enactment.

**3.** The 1992 lawsuit would be out of time by any standard unless it can be deemed to relate back to the 1986 complaint.

to an amended complaint.[4] Thus the principle of Rule 15(c)(2) of the Fed. R. Civ. Proc. appears applicable.

Rule 15(c)(2) allows relation back when the claim set forth in the amended complaint "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original" complaint. Plaintiff's satisfaction of that standard is not disputed before us. Although normally, of course, an amendment adding a new party defendant could not relate back if that prejudiced the added party, cf. *Schiavone v. Fortune*, 477 U.S. 21, 31, 106 S.Ct. 2379, 2385, 91 L.Ed.2d 18 (1986), there can hardly be fatal prejudice where the new defendant has been added simply because that very party, through the exercise of its sovereign power, required the substitution.

Of course, in an FTCA suit the plaintiff's presentation to the agencies must meet the standards implicit in 28 U.S.C. §§ 2401(b) & 2675(a). We have understood them to require "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim." *GAF Corp. v. United States*, 818 F.2d 901, 919 (D.C.Cir.1987). The government raises no issue on this score, and we see none.

The remaining question, then, is the extent to which Mittleman's claims, initially filed in court June 30, 1986, met the District of Columbia statutes of limitations made applicable by § 8(d) of the Westfall Act.

As labelled in her 1992 complaint, Mittleman's claims are (putting aside seemingly extraneous references such as ones to due process) (1) intentional infliction of emotional distress, (2) false light invasion of privacy and (3) negligence. 1992 Complaint ¶¶ 54–57. Mittleman argues that as there is no express statute of limitations for any of the three, we should apply the District's three-year period for any cause of action which is not "specially prescribed." See D.C.Code

§ 12–301(8). But the District does not resort to this default provision every time a plaintiff uses a label that does not precisely match a specific statute of limitations. If a stated cause of action is "intertwined" with one for which a limitations period is prescribed, District courts apply the specifically stated period, not the three-year catch-all. See *Saunders v. Nemati*, 580 A.2d 660, 661–62 (D.C.App.1990); see also *Hunter v. District of Columbia*, 943 F.2d 69, 71–72 (D.C.Cir.1991) (finding claim for emotional damages arising from assault governed by one-year period prescribed for assault).

■ Applying that standard to the claims at issue, we consider first the false light invasion of privacy claim. Under the three-year default provision, this would just make it, assuming that Mittleman got adequate notice only on July 6, 1983, when she received a copy of the OPM report that is the primary ground of this claim. But in fact the claim is thoroughly "intertwined" with libel and slander, governed by the one-year provision of D.C.Code § 12–301(4). According to the Restatement (Second) of Torts, which the District followed in finding that such a claim existed, see *Vassiliades v. Garfinckel's*, 492 A.2d 580, 587 (D.C.App.1985), the *sine qua non* of a false light claim is giving "publicity" to a matter which places the plaintiff "before the public" in a false light. See Restatement (Second) Torts § 652E. Libel and slander similarly involve publication of false statements about another. Thus, the one-year statute of limitations should apply to both claims. See D.C.Code § 12–301(4). See also *Grunseth v. Marriott Corp.*, 872 F.Supp. 1069, 1074 (D.D.C.1995) (applying one-year defamation statute to invasion of privacy claim as "essentially a type of defamation").

Mittleman argues that defamation and invasion of privacy protect different interests—the former protecting the interest in reputation, the latter the interest in the personal psyche—and that therefore we should not

---

4. Despite the above, we are baffled by the lawsuit proliferation present here. Mittleman presses her tort claims *both* in an amended complaint in the 1986 lawsuit that is not before us, and in the complaint in the 1992 suit. District courts dismissing claims in anticipation of later presentation appear to have contemplated that the lawsuit, once renewed, would be either a new one, see, e.g., *Jackson v. United States*, 789 F.Supp. 1109, 1111–12 (D.Colo.1992) (dismissing without prejudice), or simply the old one with an amended complaint, *O'Neill by O'Neill v. United States*, 732 F.Supp. 1254, 1257–58 (E.D.N.Y.1990) (dismissing with leave to amend), but not *both*.

consider them intertwined. But in fact both claims protect both interests. See *Vassiliades,* 492 A.2d at 594 (plaintiff in invasion of privacy case may recover for emotional distress and harm to reputation); Restatement (Second) of Torts § 623 ("One who is liable to another for a libel or slander is liable also for emotional distress...."). As Mittleman was fully aware of the gravamen of the false light claim no later than when she received the OPM report on July 6, 1983, the claim is plainly out of time.[5]

▮ The emotional distress and negligence claims are more obscure. Because the district court believed that the claims were controlled by a two-year period derived from 28 U.S.C. §§ 2401(b) & 2675(a), it had no occasion to sort out the possible cores of these claims. This is no easy task, as the complaint contains 35 pages of "factual background" before it concludes in its statement of three claims, which themselves are rather diffusely expressed.

Consider the claim for intentional infliction of emotional distress. In *Saunders* the D.C. Court of Appeals ruled that such a claim, if grounded in "verbal abuse," was not "dependent" on others for which a period is specifically prescribed, so that the three-year default provision would apply. *Saunders,* 580 A.2d at 662. On the other hand, emotional injury arising out of the publication of false statements, as from false light invasion of privacy, would be governed by the one-year statute of limitations. See *Foretich v. Glamour,* 741 F.Supp. 247, 251 (D.D.C.1990) (applying one-year period for intentional infliction of emotional distress via libel); *Thomas v. News World Communications,* 681 F.Supp. 55, 72 (D.D.C.1988) (same); cf. *Hunter,* 943 F.2d at 71–72 (claim for emotional distress due to assault governed by assault period).

Here it appears that the emotional distress claim arises simply out of the defamatory statements. In paragraph 46 of her complaint, for example, Mittleman alleges:

Plaintiff has been shocked, depressed, disillusioned and demoralized by the acts and omissions of employees and departments of the United States.... Rather

than providing plaintiff encouragement or assistance, the United States and its employees and agencies, have created false accusations and supporting documents. Plaintiff has been shocked to learn she was accused, among other things, of being a security risk....

Complaint ¶ 46 (July 24, 1992) (D.D.C., Civ. No. 92–1741). Nonetheless, as the complaint roams over a vast territory, it remains possible that there are emotional distress claims that depend on something other than the defamation and that constitute a tort in the District of Columbia that is embraced by the FTCA. For example, in her presentation to the various administrative agencies, Mittleman contends that mistreatment at the hands of the Secret Service, as opposed to false statements, led to her distress. See, e.g., October 28, 1991 Presentation to Treasury Department at 4–5, Civ. A. 86–1852, Record # 126, Vol. 4 (alleging that "for a period of time, she suffered extreme stress if she had to go anywhere near the Treasury building .... because of the treatment of her by the Secret Service, who stopped and detained her when she was trying to process out to receive her last paycheck."). It appears, however, that these episodes occurred in 1981, too early for Mittleman's claim to be on time even under the three-year catch all.

The negligence claim is the least clearly made out, as Mittleman seems to claim she was owed a duty by almost everyone in the government with whom she came into contact:

The United States was negligent in its performance of duties toward plaintiff. Plaintiff relied upon the government's provision of security as carried out by the Treasury Security Force. Plaintiff asked Lt. Anderson to help her find Roger Altman after she had a disturbing telephone call with a Chrysler official. Plaintiff also sought out and relied upon the government's investigation of waste, fraud and abuse as conducted by the Inspector General, the government's conducting background investigations, and providing a place of employment which treated its employees with fundamental fairness and an

---

**5.** Thus we need not reach the issue of whether the false light claim is barred by 28 U.S.C.

§ 2680(h), barring FTCA claims for libel and slander.

absence of abuse of power and authority, among other things. The government breached these duties owed to plaintiff who sought the care or services of the government.

Complaint ¶ 57. It is again obscure whether there is any wrong asserted here independent of the allegedly false statements.

Thus, we remand to the district court for the plaintiff to refine her negligence and emotional distress claims into clear enough terms so that the court can determine whether either of them is (besides being a tort, not preempted by federal law, for which recovery is possible in the District and under the FTCA) independent enough of the false statements to be governed by a statute of limitations other than the one-year period for slander and libel.

We finally note that if indeed there are claims independent of the libel and slander (or of other torts governed by a specific period of less than three years), they may well have accrued too soon, i.e., before June 30, 1983, three years before the filing of the initial complaint. Mittleman's direct misfortunes at the Treasury all seem to have occurred in late 1980 or very early in 1981, the point at which she was dismissed. And the critical sequel, her rejection for a job at the Commerce Department, occurred at some time before May 17, 1983. See *Mittleman I*, 773 F.Supp. at 447. Thus, even accepting the proposition that Mittleman was unaware of the allegedly defamatory character of government employees' statements until July 6, 1983, it is exceedingly unclear whether she is alleging any tortious non-defamatory activities of which she might have been unaware as late as June 1983. In the absence of such activities, of course, her claims would not be timely even under the catch-all provision.

The judgment of the court is affirmed as to Mittleman's second claim, relating to false light invasion of privacy, and otherwise the case is remanded to the district court for proceedings consistent with this opinion.

*So ordered.*