Elaine MITTLEMAN, Plaintiff,

v.

UNITED STATES, Defendant.

Elaine MITTLEMAN, Plaintiff,

v.

UNITED STATES DEPARTMENT OF THE TREASURY, James A. Bayer, United States Department of Commerce, Bruce Smart, James T. King, United States Secret Service, John R. Simpson, United States Office of Personnel Management, Constance Horner, Protected Source "A," Protected Source "B," United States Merit Systems Protection Board, Maria L. Johnson, Office of Special Counsel, Mary Wieseman, Shigeki J. Sugiyama, Michael A. Driggs, Roger C. Altman, Anthony L. Conques, and Bruce D. Bolander, Defendants.

Elaine MITTLEMAN, Plaintiff,

v.

James B. KING, United States Office of Personnel Management, Ronald H. Brown, and United States Department of Commerce, Defendants.

Civil Action Nos. 92–1741 SSH, 86–1852 SSH, 93–1869 SSH.

United States District Court, District of Columbia.

Feb. 9, 1998.

Elaine Mittleman, Falls Church, VA, pro se.

Nancy R. Page, Asst. U.S. Atty., Washington, DC, for Defendant.

## *OPINION*

STANLEY S. HARRIS, District Judge.

The following motions and memoranda are pending before the Court in these civil actions:

(1) Plaintiff's motion to strike defendants' affirmative defenses in Civil Actions No. 86–1852, 92–1741, and 93–1869;

(2) The parties' memoranda regarding the refinement of plaintiff's claims in Civil Actions No. 92–1741 and 86–1852;

(3) Defendant Secret Service's further motion to dismiss or, in the alternative, for

summary judgment in Civil Action No. 86–1852;[1]

(4) Plaintiff's motion to amend her complaint in Civil Action No. 86–1852;

(5) Plaintiff's motion for sanctions in Civil Action No. 86–1852;

(6) Plaintiff's motion that the Declaration of Robert Anderson Be Withdrawn in Civil Action No. 86–1852;

(7) Plaintiff's "Motion To Preclude the Defendants' Reliance Upon the November 19, 1980, Memorandum for the Truth of the Matter Asserted Therein" in Civil Action No. 86–1852;

(8) Defendants' further motion to dismiss or, in the alternative, for summary judgment in Civil Action No. 93–1869; and

(9) Plaintiff's motion to substitute Acting Secretary of Commerce Mary Good in her official capacity as a defendant in Civil Action No. 93–1869.

Two of plaintiff's motions (Nos. 6 and 7) have not been fully briefed. However, after reviewing those motions and independently researching the issues raised, and in light of the abundance of briefs in this case, the Court has determined that it is able to rule on those motions without further briefing. Upon careful consideration of all the motions and memoranda filed by the parties, the motions hearing held on January 8, 1998, and the entire record, the Court grants summary judgment on the first five parts of plaintiff's Privacy Act claim in Civil Action No. 86–1852 and orders further briefing limited to the single remaining Privacy Act claim. The Court also grants defendants' motions to dismiss the remaining claims in Civil Actions No. 92–1741 and 93–1869. The Court denies plaintiff's motion to strike defendants' affirmative defenses in all three cases. The Court also denies plaintiff's motion to amend, motion for sanctions, motion to withdraw the

Anderson declaration, and motion to preclude defendants' reliance on the November 19, 1980, document in Civil Action No. 86–1852. Finally, the Court denies plaintiff's motion to substitute defendant in Civil Action No. 93–1869.

## BACKGROUND

These cases are the remainder of a series of lawsuits filed by plaintiff against the United States government over incidents occurring between 1980 and 1983.[2] The factual background has been set forth in great detail in the Court's three previous Opinions. *See Mittleman v. United States Treasury,* 773 F.Supp. 442 (D.D.C.1991) (hereinafter *Mittleman I* ); *Mittleman v. United States Dept. of Treasury,* 919 F.Supp. 461 (D.D.C.1995), *rev'd in part,* 104 F.3d 410 (D.C.Cir.1997) (hereinafter *Mittleman II* ); *Mittleman v. King,* No. 93–1869, slip op. at 2–7 (D.D.C. Nov. 4, 1997) (hereinafter *Mittleman IV* ).[3] Nevertheless, the Court reviews the background.

Plaintiff worked on the staff of the Chrysler Loan Guarantee Board ("CLGB") at the Department of the Treasury ("Treasury") between May 1980 and January 1981. During her tenure, plaintiff became concerned that Chrysler Corporation was providing Treasury with overly optimistic financial forecasts. She communicated her concerns to several Treasury officials, but generally received no response. Plaintiff eventually met with Roger Altman, the Assistant Secretary for Domestic Finance at Treasury who supervised the CLGB, to discuss her concerns. Altman told her to prepare a memorandum for further discussion. Plaintiff did so, but she and Altman never had further discussion on the matter.

On the evening of November 3, 1980, after returning from Chrysler's offices in Detroit, plaintiff became determined to talk to Altman and went to look for him.[4] Plaintiff

---

1. The Secret Service originally filed a motion to dismiss or, in the alternative, for summary judgment in 1996. Before the Court addressed that motion, the Secret Service abandoned its position and filed a further motion to dismiss.

2. Plaintiff is an attorney who is proceeding *pro se.*

3. *Mittleman III* is the opinion of the Court of Appeals in *Mittleman v. United States,* 104 F.3d 410 (D.C.Cir.1997).

4. In particular, plaintiff wanted to talk with Altman about problems she had been having with Frederick W. Zuckerman, a Chrysler executive.

claims that she was crying outside Altman's office when she was approached by Lieutenant Robert Anderson, one of the Secret Service officers who patrolled the Treasury building. Lt. Anderson attempted to help plaintiff find Altman, but they were unsuccessful, so plaintiff went home.[5]

In December 1980, under the direction of Altman and other Treasury officials, plaintiff's supervisor, Michael Driggs, informed plaintiff that she was to be terminated, and that in the interim she was not going to be working on any Chrysler matters. Thus, from mid-December through January 30, 1981, plaintiff worked in the Washington Building, a building separate from the one in which the CLGB staff was located.

Plaintiff complained to the Treasury Inspector General ("IG") about the Chrysler issues and approached the Office of Special Counsel ("OSC") with her concerns about her termination. The ensuing IG investigation led to a report (the "IG report") which included interviews with Altman and Driggs insinuating that plaintiff may have gone through papers on Altman's desk and leaked various stories to the press. By letter dated January 29, 1981, plaintiff requested a copy of the IG report. She received a redacted version on or about February 12, 1981.

Plaintiff was terminated on January 30, 1981. About ten days after being terminated, plaintiff was stopped by the Secret Service when she returned to Treasury to get her final paycheck. She was not allowed to enter the building without permission.

In the spring of 1982, plaintiff applied for the position of Special Assistant to Gary Horlick, a Schedule C position at the Department of Commerce ("Commerce"). Because plaintiff did not have a security clearance, the Office of Personnel Management ("OPM") did a background investigation. The investigator requested that plaintiff sign a release for the IG report. Plaintiff agreed to sign the release, but because she knew it was "confusing and incorrect," she stated that she wanted to meet with and explain the report to whomever reviewed it. Plaintiff alleges that the investigator assured her that persons who are investigated always have the opportunity to review their file and make comments and corrections, but plaintiff was never afforded that opportunity. Later that spring, plaintiff was informed that she did not get the Commerce job. She alleges that the decision not to hire her was based on false information contained in the report prepared by the OPM as a consequence of its investigation (the "OPM report").[6]

On May 17, 1983, plaintiff wrote a letter to the OPM requesting a copy of its report. She received a redacted copy on July 6, 1983. It was then that she learned of the accusations against her. The OPM report contained statements which plaintiff alleges were "inaccurate, irrelevant, extremely derogatory and defamatory, and almost ludicrous in their exaggeration." She believed that the statements were made intentionally and maliciously, and with knowledge of their falsity. Over the next several years, plaintiff continued to request amendment of the OPM and IG reports and to attempt to get unredacted copies of both reports (she finally received an unredacted copy of the IG report in 1987). Ultimately, plaintiff filed the three above-captioned lawsuits in an attempt to gain compensation, both monetary and through amendment of her files, for damage to her career, her reputation, and her family as a result of the government's alleged statutory, constitutional, and tortious violations.

## STANDARDS OF REVIEW

A motion to dismiss should not be granted "unless plaintiff [ ] can prove no set of facts

---

5. This encounter was memorialized in a letter by Lt. Anderson dated November 19, 1980. Plaintiff takes great issue with this letter, alleging that it was created sometime in January 1981 and backdated, and that it is otherwise false. She claims that it was created in order to provide support for a request that she be restricted from the Treasury building. The alleged falsity of the document arises from her observations that (1) it provides the wrong date for the incident (the letter says November 19), (2) it says that she was an employee at a building she did not begin to work in until December of 1980, and (3) it says she was found sitting in the office, not outside the office.

6. Uncontroverted evidence in the record indicates Horlick left Commerce in June of 1983 without having filled the special assistant position.

**6**

in support of [her] claim which would entitle [her] to relief." *Kowal v. MCI Communic. Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All factual doubts must be resolved and all inferences made in favor of the plaintiff. *Tele–Communications of Key West, Inc. v. United States*, 757 F.2d 1330, 1334–35 (D.C.Cir.1985). Further, disposition must be made based on the face of the complaint and matters of general public record only. *See id.; Phillips v. Bureau of Prisons*, 591 F.2d 966, 969 (D.C.Cir.1979).

In the event matters outside the pleadings are presented to and not excluded by the court, and the court assures itself that such treatment would be fair to both parties, a motion to dismiss may be treated as one for summary judgment and disposed of as provided in Federal Rule of Civil Procedure 56. Fed.R.Civ.P. 12(b); *Americable Int'l Inc. v. Department of the Navy*, 129 F.3d 1271, 1274 n. 5 (D.C.Cir.1997); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1227 (D.C.Cir.1993); *Tele–Communications*, 757 F.2d at 1334. Summary judgment may be granted only if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a summary judgment motion, all evidence and the inferences to be drawn from it must be considered in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Mere allegations in the pleadings, however, are not sufficient to defeat a summary judgment motion; if the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**DISCUSSION**

**I. Plaintiff's Motion To Strike Defendants' Affirmative Defenses**

██ Plaintiff's first contention in all three cases is that defendants' affirmative defenses, including the statute of limitations, estoppel, qualified immunity, res judicata, and laches, have been waived because they were not raised in an answer before being presented in motions to dismiss. Plaintiff relies entirely on our Court of Appeals' recent decision in *Harris v. Secretary, U.S. Dep't of Veterans Affairs*, 126 F.3d 339 (D.C.Cir. 1997).

The Court initially notes that plaintiff most likely has waived any objection to defendants' raising a statute of limitations defense in their motions to dismiss or, in the alternative, for summary judgment, as this issue already has been litigated both in this Court and in the Court of Appeals without objection by plaintiff. *See Mittleman v. United States*, 104 F.3d 410 (D.C.Cir.1997) (*Mittleman III*); *Mittleman I*, 773 F.Supp. at 450–51. In addition, the Court does not agree with plaintiff's argument that *Harris* controls this case. The Court of Appeals in *Harris* held that in order to raise an affirmative defense in a motion for summary judgment, a defendant must have pled the defense in his answer. *See Harris*, 126 F.3d at 342–345. Though the Court realizes that the Court of Appeals generically referred to "dispositive motions" in *Harris*, the court's reasoning reflects concerns which are relevant only when considering a motion for summary judgment. *See, e.g., id.* at 343, 345. Moreover, the Court of Appeals cannot have intended its holding to apply to motions to dismiss, since Federal Rule of Civil Procedure 12 provides that a defendant need not file an answer until ten days after a motion to dismiss has been denied. Fed.R.Civ.P. 12(a)(4). If the Court were to accept plaintiff's reading of *Harris*, the Court would implicitly be telling defendants, in contravention of Rule 12(a)(4), that they must file an answer before filing a motion to dismiss.[7] The Court refuses to

---

**7.** The Court of Appeals itself has indicated that *Harris* is only applicable once defendant has filed an answer. *See Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 76 (D.C.Cir.1997)

(characterizing *Harris* as holding that "where answer had been filed without raising a Rule 8(c) defense, the defendant could not raise it without securing leave to amend answer").

assume that the Court of Appeals intended such a result, and plaintiff's motion to strike defendants' affirmative defenses is denied.

## II. Civil Action 92–1741—Refinement of Tort Claims on Remand

Plaintiff filed Civil Action No. 92–1741 after the Court granted defendants' motion to dismiss plaintiff's common law tort claims in Civil Action No. 86–1852 for failure to exhaust her administrative remedies under the Federal Tort Claims Act ("FTCA").[8] *See Mittleman I*, 773 F.Supp. at 454. The Court dismissed plaintiff's claims in Civil Action No. 92–1741 as barred by the FTCA's two-year statute of limitations, and plaintiff appealed.[9] *See Mittleman II*, 919 F.Supp. at 466. On appeal, the D.C. Circuit held that the timeliness of plaintiff's FTCA claims should have been evaluated under the District of Columbia's ("D.C.") statutes of limitations for the relevant torts, not the FTCA's two-year limitations period. *See Mittleman III*, 104 F.3d at 415. The Court of Appeals went on to hold that because plaintiff's false light/invasion of privacy claims were thoroughly "intertwined" with libel and slander, they were barred by D.C.'s one-year statute of limitations for libel and slander actions.[10] *Id.* at 415–416; *see also* D.C.Code § 12–301(4); *Saunders v. Nemati*, 580 A.2d 660, 661–62 (D.C.1990) (holding that if a stated cause of action is "intertwined" with one for which a limitations period is prescribed, D.C. law requires applying the specifically stated period, not the catchall).

The Court of Appeals could not, however, determine the scope of plaintiff's emotional distress and negligence claims. Rather, it remanded *the case to* this Court, directing plaintiff to "refine her negligence and emotional distress claims into clear enough terms so that the court can determine whether either of them is ... independent enough of the false statements to be governed by a statute of limitations other than the one-year period for slander and libel." *Mittleman III*, 104 F.3d at 417. The Court of Appeals further noted that even if there were claims independent of libel and slander, those claims should be dismissed by this Court if they accrued too soon. *See id.*

Plaintiff indicates that her claims of both intentional infliction of emotional distress and negligence arise out of the following events: (1) the fabrication of the November 19, 1980, Secret Service document; (2) the stopping and detention of plaintiff by the Secret Service in 1981; (3) the creation, maintenance, and dissemination of the allegedly false IG and OPM reports; (4) the dissemination of suspicions that plaintiff had been going through papers in Altman's office and that she was the source of news leaks; (5) Altman's failure to address plaintiff's concerns about Zuckerman; and (6) plaintiff's discharge from Treasury, allegedly in retaliation for the conflict between her and her supervisors regarding Chrysler.[11] Pl.'s Memo. To Refine Claims, at 114–121.

Plaintiff does not, however, explain how the latest refinement of her claims enables them to avoid dismissal. The portions of her emotional distress and negligence claims based on the creation, maintenance, and dissemination of the allegedly false IG and OPM reports, the dissemination of suspi-

8. Plaintiff was subsequently permitted to amend her complaint in Civil Action No. 86–1852 after she exhausted her administrative remedies, resurrecting her tort claims in that civil action.

9. The Court also dismissed plaintiff's tort claims in Civil Action No. 86–1852. *Mittleman II*, 919 F.Supp. at 466. Plaintiff did not appeal the dismissal of her tort claims in Civil Action No. 86–1852 because, due to remaining Privacy Act claims, there was no final judgment.

10. Because the Court of Appeals clearly held that plaintiff's false light claims were barred, the Court does not address plaintiff's latest attempt to redefine those claims.

11. Plaintiff attempts to "refine" her claims to include a claim of wrongful discharge and an allegation that events occurring during the litigation have caused her emotional distress and were negligent. The point of the Court of Appeals' remand, however, was for plaintiff to refine existing claims, not create new ones. *See Mittleman III*, 104 F.3d at 416. To the extent that plaintiff requests leave to amend her complaint to include these new claims, that leave is denied, since amendment at this stage of the litigation would be untimely and futile. *See* Fed.R.Civ.P. 15(a); *Atchinson v. District of Columbia*, 73 F.3d 418, 425 (D.C.Cir.1996) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

cions that plaintiff had been *going through* papers in Altman's office and that she was the source of news leaks, and the November 19 Secret Service document are clearly subject to D.C.'s one-year statute of limitations for libel and slander, and are therefore untimely.[12] *See* D.C.Code § 12–301(4); *Mittleman III*, 104 F.3d at 416; *Foretich v. Glamour*, 741 F.Supp. 247, 251 (D.D.C.1990). The claims arising out of her discharge from Treasury are also barred because, although they are governed by a three-year *statute of* limitations, the period began to run when she was discharged—at the latest in January of 1981.[13] *See* D.C.Code § 12–301(8); *Parker v. National Corp. for Housing Partnerships*, 619 F.Supp. 1061, 1066–68 (D.D.C.1985), *rev'd on other grounds*, 6 F.3d 829 (D.C.Cir. 1987); *Press v. Howard Univ.*, 540 A.2d 733, 734–35 (D.C.1988). Thus, the Court dismisses plaintiff's remaining claims in Civil Action No. 92–1741.

### III. *Civil Action No. 86–1852*

Plaintiff commenced this lawsuit on June 30, 1986. Her amended complaint sets forth allegations of violations of the Freedom of Information Act ("FOIA"), the Administrative Procedure Act ("APA"), 42 U.S.C. § 1985, the Privacy Act, the First, Fourth, Fifth, Sixth, and Ninth Amendments to the

Constitution, and common law tort. By Opinions (and Orders) dated August 29, 1991, and August 28, 1995, the Court dismissed or granted summary judgment on all of plaintiff's claims except her Privacy Act claim against the Secret Service. *See Mittleman II*, 919 F.Supp. 461; *Mittleman I*, 773 F.Supp. at 442.

### A. The Secret Service's Further Motion To Dismiss or for Summary Judgment

Plaintiff's remaining Privacy Act claim against the Secret Service concerns four documents, including the November 19, 1980, incident report, purporting to describe various incidents at Treasury involving plaintiff and the measures taken to ensure that plaintiff no longer had access to the building. These documents were maintained as part of the Secret Service's Non–Criminal Investigation Information System of Records. In addition, copies of the documents were discovered in plaintiff's administrative file, which is part of the Secret Service's Public Affairs Record System.[14] Plaintiff alleges that the Secret Service: (1) has refused to amend the documents in these files in violation of 5 U.S.C. § 552a(d)(3); (2) has not maintained only such information about plaintiff as is

---

**12.** Plaintiff's claims accrued, at the latest, on July 6, 1983, when she received a redacted copy of the OPM report. Though plaintiff attempts to argue that the statute of limitations could not have begun to run until 1987, when she received an unredacted copy of the IG report, it is unquestionable that the redacted OPM report was sufficient to put plaintiff on notice as to the substance of the allegations. Moreover, plaintiff has admitted on numerous occasions that she was on actual notice of the allegations and falsities in 1983. *See Owings v. Secretary of the United States Air Force*, 447 F.2d 1245, 1255 & n. 33 (D.C.Cir. 1971), *cert. denied*, 406 U.S. 926, 92 S.Ct. 1799, 32 L.Ed.2d 128 (1972); *Mittleman II*, 919 F.Supp. at 466; *Mittleman I*, 773 F.Supp. at 450–51 & n. 6; *see also, e.g.*, 86–1852 Am. Compl. ¶¶ 41, 46; *Phillips*, 591 F.2d at 969 (in evaluating motion to dismiss, court may take judicial notice of items of general public record). The Court also rejects plaintiff's continuing attempts to excuse the untimeliness of her claims under the doctrine of fraudulent concealment and the continuing tort doctrine. *See also Mittleman II*, 919 F.Supp. at 466–67.

**13.** Similarly, any claim arising out of Altman's failure to address plaintiff's problems with Zuck-

erman in 1980 or her being stopped by Secret Service agents in 1981 are barred by any conceivable statute of limitations.

**14.** In its original motion to dismiss or, in the alternative, for summary judgment, the Secret Service argued that because plaintiff's records were part of the Non–Criminal Investigation Information System, they were exempt from the Privacy Act pursuant to 5 U.S.C. § 552a(k)(2). On October 9, 1997, however, the Secret Service filed an amended further motion to dismiss or, in the alternative, for summary judgment which discarded the argument that plaintiff's files were exempt from the Privacy Act. The Secret Service changed its position because it performed another search and discovered a file labeled "800.0"— plaintiff's administrative file for 1981—which contained all the relevant documents. These records had not been searched for previously because they were supposed to have been destroyed in 1984. Decl. of John M. Machado ¶ 6; Decl. of Albert Concordia ¶¶ 9–10. The Secret Service now concedes that the documents at issue are not exempt from the Privacy Act.

relevant and necessary to accomplish a purpose of the agency, in violation of § 552a(e)(1); (3) failed to collect information to the greatest extent practicable from plaintiff, in violation of § 552a(e)(2); (4) failed to maintain the records about plaintiff with reasonable accuracy, in violation of § 552a(e)(5); (5) failed to establish appropriate safeguards to protect against threats or hazards to the records' integrity, in violation of § 552a(e)(10) and (6) violated the disclosure provision of § 552a(b) by sending the documents to the public affairs office.[15] The Secret Service argues that all these Privacy Act claims are barred by the statute of limitations.

■ The statute of limitations for Privacy Act claims is two years. 5 U.S.C. § 552a(g)(5). Plaintiff, in her pleading, carefully and persuasively details inconsistencies in the November 19, 1980, incident report which support her theory that the document was backdated in order to provide a justification for firing her and barring her from the Treasury building. The fact remains, however, that plaintiff received unredacted copies of the four Secret Service documents contained in her files in July 1983, almost three years before she filed her complaint in this case.[16] The Court therefore grants the Se-

cret Service's motion for summary judgment with respect to the first five of plaintiff's Privacy Act claims.[17]

■ The Court notes, however, that plaintiff's sixth claim does not violate the statute of limitations, because plaintiff did not know until 1996 that the allegedly false Secret Service documents were contained in an administrative file accessible to the public. The parties do not otherwise specifically address the viability of this claim. In light of the fact that plaintiff raised this claim for the first time in her opposition to the Secret Service's further motion to dismiss or, in the alternative, for summary judgment, the Court does not reach the question whether the Secret Service's motion with respect to plaintiff's sixth Privacy Act claim should be granted. Rather, the Court requests that the parties submit further briefing limited solely to the viability of plaintiff's allegation that the Secret Service violated the disclosure provision of § 552a(b) by sending the four disputed Secret Service documents to the public affairs office.

## B. Plaintiff's Motion To Amend the Complaint

Plaintiff requests that the Court allow her to amend her complaint in Civil Action No.

---

15. Plaintiff's complaint does not contain facts to support her sixth Privacy Act claim, due to the fact that plaintiff did not know of the existence of an administrative file containing these documents until June 1996, when the file was first produced by the Secret Service. In light of plaintiff's status as a *pro se* plaintiff (notwithstanding her being a lawyer), the Court treats plaintiff's statement of her Privacy Act claims contained in her opposition to the Secret Service's further motion to dismiss or, in the alternative, for summary judgment, as an amendment of her complaint to include the allegation that the Secret Service improperly sent her file to the public relations office.

16. Plaintiff attempts to dispute this portion of the record by arguing that the documents attached to the Secret Service's motion were actually released to her in 1994; she notes that the documents released in 1983 had, in the upper right-hand corners, the letters "A," "B," "C," and "D." She does not, however, dispute that she received unredacted copies of the relevant documents in 1983—in fact she attached copies of the documents she received in 1983 to her opposition to the Secret Service's original motion to dismiss or, in the alternative, for summary judg-

ment. *See* Pl.'s Opp. to Def.'s Mot. To Dismiss or for S.J., Exhs. 16 & 17. The Court rejects plaintiff's argument that the differences in the marginal notations between the documents released to her in 1983 and 1994 "tolled" the statute of limitations under 5 U.S.C. § 552a(g)(5). The body of the documents (and the alleged misrepresentations they contain) are identical, and therefore plaintiff was fully on notice of alleged Privacy Act violations in 1983.

17. The Court considered evidence outside of the pleadings, and thus the Court grants the Secret Service's motion for summary judgment, not its motion to dismiss. *See* Fed.R.Civ.P. 12(b); *Americable Int'l*, 129 F.3d at 1275 n. 5. Because the Court grants the Secret Service's motion for summary judgment on statute of limitations grounds, it does not address the Secret Service's argument that plaintiff failed to proffer evidence that the misrepresentations contained in the Secret Service documents were "willful and intentional," as required by § 552a(g)(4).

The Court further notes that defendants have offered to destroy the Secret Service documents which plaintiff claims are false. This would presumably moot any Privacy Act claim requesting amendment of plaintiff's file.

86–1852 to include a new cause of action, namely that:

> The creation, maintenance and reliance upon a false Secret Service document and the persistent refusal either to authenticate the document or refute it by Treasury and Secret Service and their officials are acts which have violated plaintiff's Fifth Amendment right to due process. These acts, which began while plaintiff was a Treasury employee, are also in violation of 42 U.S.C. § 1985(1).

Pl.'s Proposed Amend. ¶ 135h. Defendants object to the proposed amendment on numerous grounds, including undue delay and futility of amendment.

 At this stage of the proceedings, a party may amend her complaint "only by leave of court or by written consent of the adverse party." Fed.R.Civ.P. 15(a). Though the Rule provides that "leave shall be freely given when justice so requires," *id.*, denial of leave to amend is appropriate in cases of " 'undue delay, ... repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.' " *Atchinson v. District of Columbia*, 73 F.3d 418, 425 (D.C.Cir. 1996) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). "Futility" means, *inter alia*, that the proposed claim would not survive a motion to dismiss. *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C.Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 737, 136 L.Ed.2d 676 (1997); *see also Willoughby v. Potomac Elec. Pwr. Co.*, 100 F.3d 999, 1003 (D.C.Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1553, 137 L.Ed.2d 701 (1997).[18]

 To the extent that plaintiff wishes to amend her complaint to allege a new § 1985(1) claim, the Court denies her request as untimely and futile. It has been clear since plaintiff filed this lawsuit in 1986 that she believed government officials had conspired against her in this matter. *See* No. 86–1852 Am.Compl. ¶¶ 97–103. Denial of leave to amend is appropriate where a party has had sufficient opportunity to state a claim but has failed to do so. *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 247 (D.C.Cir.1987). Plaintiff's recent discovery of a new fact supporting this cause of action does not mitigate the extreme delay in her request to amend her complaint—a delay of almost ten years. Moreover, even assuming *arguendo* that plaintiff's request to add a § 1985(1) claim were not so tardy as to warrant denial of leave to amend, the Court would still deny plaintiff's request because of the futility of her proposed § 1985(1) amendment. Plaintiff's new § 1985(1) claim clearly cannot survive a motion to dismiss because, as previously discussed in the Court's August 29, 1991, Opinion, the "CSRA [Civil Service Reform Act] is the exclusive remedy for aggrieved federal employees and, ... therefore, they are precluded from resorting to § 1985(1)." *Mittleman I*, 773 F.Supp. at 449 (citing *Spagnola v. Mathis*, 809 F.2d 16, 28–30 (D.C.Cir.1986), *on reh'g en banc*, 859 F.2d 223 (D.C.Cir.1988)).

 Turning to plaintiff's request to add a Fifth Amendment claim regarding the allegedly false Secret Service document, the Court does not deny plaintiff's motion on timeliness grounds, but rather concludes that plaintiff's Fifth Amendment claim is futile and thus denies leave to amend.[19] At this stage of the proceedings, it is undisputed that the allegedly false Secret Service document upon which plaintiff bases her Fifth Amendment claim was contained in a system of records falling under the Privacy Act. *See supra* n. 14. The relief plaintiff seeks under the Fifth Amendment is the same as that

---

18. The Court notes that in order for a *pro se* litigant's claim to be dismissed, it must appear beyond a doubt that she cannot prove a set of facts to support her claims. *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C.Cir.1981). (The Court applies that standard here, irrespective of the previously noted fact that plaintiff is a lawyer).

19. Leave to amend is not denied on timeliness grounds because in 1995, when the Court denied plaintiff's motion for a declaratory judgment that the creation, maintenance, and reliance upon the documents violated her Fifth Amendment rights, the Court indicated that it would reconsider its decision in light of future developments in the case. *See Mittleman II*, 919 F.Supp. at 467–68.

afforded by the Privacy Act.[20] Thus, she has received all the process she was due and she is not entitled to any Fifth Amendment relief. *See Dickson v. OPM*, 828 F.2d 32, 41 (D.C.Cir.1987); *Hobson v. Wilson*, 737 F.2d 1, 65–66 (D.C.Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985); *see also Mittleman II*, 919 F.Supp. at 467–68 (stating that the Court would consider plaintiff's Fifth Amendment request only if the Privacy Act did not apply). Since plaintiff's Fifth Amendment claim would not survive a motion to dismiss, her request for leave to amend is denied. *See James Madison*, 82 F.3d at 1099.

### C. Plaintiff's Motion for Sanctions

██ Plaintiff bases her motion for sanctions on two grounds.[21] First, she argues that the Secret Service's changing position about the location of the four Secret Service documents warrants sanctions.[22] Though the Court is troubled by the Secret Service's inability to pinpoint the location of the disputed documents and plaintiff's files, the Court attributes this confusion to bureaucratic mistakes, not willful conduct on the part of defendants. Defendants' most recent changes of position have been supported by affidavits explaining the confusion necessitating the changes. *See Defs.' Mot. To Dis. or for S.J.*, at 3–8; *Defs.' Furth. Mot. To Dis. or for S.J.*, at 3–7. The Court does not, therefore, believe that the Secret Service's changes of position warrant sanctions.

██ Plaintiff also argues that defendants should be sanctioned for refusing to confirm or deny the truth of the November 19, 1980, Secret Service document. At the time plaintiff's motion for sanctions was filed, however, defendants were under no duty to verify the document; defendants' position was that plaintiff's file was exempt from the Privacy Act so they were under no legal duty to address the truth of the documents. More recently, defendants have abandoned that position and now concede that plaintiff's files are subject to the Privacy Act. When defendants changed their position in this fashion, they immediately submitted an affidavit by the author of the November 19 document directly addressing its accuracy. *See Defs.' Furth. Mot. To Dis. or for S.J.*, at 9–11 & Appx. C. The Court finds that defendants have acted in a fair and reasonable manner in their treatment of the veracity of the November 19 document, and plaintiff's motion for sanctions thus is denied.

### D. Plaintiff's Motion that the Declaration of Robert Anderson Be Withdrawn

Plaintiff contends that the declaration of Robert Anderson, which the Secret Service filed in support of its motion to dismiss or, in the alternative, for summary judgment, should be withdrawn because it conflicts with other evidence in the record. Though inconsistencies between the Anderson Declaration and other evidence certainly affect the weight given to the Anderson Declaration when evaluating a motion for summary judgment, plaintiff cites no legal basis for striking an otherwise proper affidavit merely because it is contradicted by other evidence in the record. The Court thus denies plaintiff's motion to withdraw the Anderson Declaration.[23]

---

**20.** The only relief to which plaintiff may be entitled under the Fifth Amendment would be an injunction ordering the Secret Service to amend her file. *See Mittleman I*, 773 F.Supp. at 454 (stating that the Privacy Act precludes any damages claim). The Privacy Act provides for injunctive relief in the event an agency refuses to correct or amend inaccuracies in an individual's file. *See* 5 U.S.C. §§ 552a(g)(1)(A) & (2)(A); *R.R. v. Department of the Army*, 482 F.Supp. 770, 774 (D.D.C.1980).

**21.** This is plaintiff's second motion for sanctions in Civil Action No. 86–1852. Her first motion for sanctions was denied in 1995. *See Mittleman II*, 919 F.Supp. at 467.

**22.** *See supra* n. 14 (discussing the Secret Service's most recent change of position). During the course of this litigation, the Secret Service has changed its position on the location of the documents three times. *See Mittleman II*, 919 F.Supp. 461, 467 (discussing the Secret Service's previous changes of position).

**23.** The Court also denies plaintiff's motion to preclude defendants' reliance upon the November 19, 1980, Secret Service memorandum for the truth of the matters asserted therein. Plaintiff contends that because the Secret Service previously represented to the Court that it would not rely on the document for the truth of the matter asserted, it is estopped from relying on it in its

### E. Reconsideration of the Dismissal of Plaintiff's Tort Claims

Although the Court of Appeals' opinion in *Mittleman III* dealt only with plaintiff's tort claims in Civil Action No. 92–1741, the Court briefly re-evaluates its previous decision dismissing plaintiff's FTCA claims in Civil Action No. 86–1852 in light of *Mittleman III*. Plaintiff's tort claims in Civil Action No. 86–1852 consist of (1) wrongful discharge, denial of employment, and breach of an implied covenant of good faith and fair dealing, (2) intentional interference with plaintiff's pursuit of her career, and (3) defamation and negligent misrepresentation. *See* No. 86–1852 Am.Compl. ¶ 122. As the Court has noted on previous occasions, these claims are based on the same set of facts as are presented in Civil Action No. 92–1741. *See Mittleman II*, 919 F.Supp. at 466.

Plaintiff's wrongful discharge and related claims accrued when she was fired from Treasury in late 1980 or early 1981, and thus her 1986 complaint does not comply with any conceivable statute of limitations. *See* D.C.Code § 12–301. Plaintiff's claim of intentional interference with her career apparently is based on the alleged misrepresentation that she leaked information to the press and that she was found going through papers on Altman's desk. As previously discussed, plaintiff admits that she knew of the allegations against her at the very latest in 1983. As a result, this claim is barred by the one-year statute of limitations for claims in-tertwined with allegations of libel and slander. *See* D.C.Code § 12–301(4); *Mittleman III*, 104 F.3d at 416. Plaintiff's claims of defamation and negligent misrepresentation are similarly barred by the libel and slander statute of limitations. *See* D.C.Code § 12–304(4); *Mittleman III*, 104 F.3d at 416. Thus, the Court reaffirms its dismissal of plaintiff's tort claims in Civil Action No. 86–1852, even in light of *Mittleman III*.[24]

### IV. *Civil Action No. 93–1869—Defendants' Further Motion To Dismiss or, in the Alternative, for Summary Judgment*

This case relates primarily to the events surrounding plaintiff's failure to get a job at Commerce in 1982. Plaintiff's original complaint, filed September 8, 1993, sought relief under the APA, the First and Fifth Amendments, the FOIA, and the Privacy Act. By Opinion (and Order) dated November 4, 1997, the Court dismissed or granted summary judgment on all of plaintiff's claims except (1) plaintiff's assertion that defendants' failure to provide her a name-clearing opportunity when she did not get the Commerce job violates the APA and the Fifth Amendment (a portion of plaintiff's fourth claim); and (2) plaintiff's allegation that Commerce did not comply with applicable agency regulations when it failed to provide her with an opportunity to respond to the allegations discovered in her background investigation in violation of the Fifth Amendment (a portion of plaintiff's fifth claim).[25]

---

most recent motion. Plaintiff's argument, however, is based on a misunderstanding of the Secret Service's previous litigation position and legal arguments. To the extent that plaintiff is complaining about changes in the Secret Service's litigation position during the case, this issue has already been completely discussed in response to plaintiff's motion for sanctions.

24. The Court further notes that even assuming *arguendo* that plaintiff's claims of intentional interference with her career, defamation, and negligent misrepresentation were within the statute of limitations, they would still be barred due to the intentional tort exception to the FTCA, which provides that "[a]ny claim arising out of ... libel, slander, misrepresentation, deceit, or interference with contract rights" is not actionable. 28 U.S.C. § 2680(h). All of these claims are based on plaintiff's allegations that the statements by Driggs, Altman, Anderson, and others in the IG report are false and misleading and have damaged her reputation. Plaintiff's defamation claim is clearly barred by § 2680(h). *See Art Metal–USA v. United States*, 753 F.2d 1151, 1155–56 (D.C.Cir.1985) (defamation is legally indistinguishable from libel or slander). The D.C. Circuit has also made it clear that claims of interference with "prospective advantage," such as plaintiff's claim of interference with her career, are barred by the FTCA. *See id.* at 1155. Finally, plaintiff cannot avoid § 2680(h) by describing her claim as one for "negligent," rather than "intentional," misrepresentation when the allegations in the complaint clearly implicate defamation, not negligent misrepresentation. *See Kugel v. United States*, 947 F.2d 1504, 1506–07 (D.C.Cir.1991).

25. On October 8, 1993, defendants moved to dismiss all of plaintiff's claims, save her FOIA and Privacy Act claims, pursuant to Federal Rule

At the Court's request, defendants filed a further motion for dismissal or summary judgment addressing these remaining claims.[26]

## A. Plaintiff's Fourth Claim (APA and Fifth Amendment)

■ Defendants first assert that they are entitled to dismissal of the remainder of plaintiff's fourth claim because both aspects thereof are barred by the statute of limitations. The statute of limitations for an APA claim is six years. *See* 28 U.S.C. § 2401(a); *Impro Prods., Inc. v. Block,* 722 F.2d 845, 850 (D.C.Cir.1983), *cert. denied,* 469 U.S. 931, 105 S.Ct. 327, 83 L.Ed.2d 264 (1984). Similarly, the statute of limitations for plaintiff's request for injunctive relief under the Fifth Amendment is at most six years. *See* 28 U.S.C. § 2401(a); *Kendall v. Army Board for Correction of Military Records,* 996 F.2d 362, 365–66 (D.C.Cir.1993); *Mason v. Judges of the United States Court of Appeals for the District of Columbia Circuit,* 952 F.2d 423, 424–25 (D.C.Cir.1991), *cert. denied,* 506 U.S. 829, 113 S.Ct. 92, 121 L.Ed.2d 54 (1992); *Geyen v. Marsh,* 775 F.2d 1303, 1306–07 (5th Cir.1985). The denial of employment at Commerce to plaintiff occurred, at the latest, in 1983. *See* 93–1869 Compl. ¶ 8. Thus, the statute of limitations for both plaintiff's APA and Fifth Amendment claims expired in 1989—four years before plaintiff filed this case.[27] The Court thus dismisses the remainder of plaintiff's fourth claim on statute of limitations grounds.[28]

■ Moreover, even assuming *arguendo* that plaintiff had filed her fourth claim within a conceivable statute of limitations, defendants would still be entitled to summary judgment. The APA authorizes judicial review of agency action only when there has been "final agency action." 5 U.S.C. § 704. Defendants have proffered evidence that there never was a final decision regarding plaintiff because Gary Horlick, the individual for whom plaintiff was applying to be a special assistant, left public service at the end of the spring of 1993. *See* Horlick Decl. ¶¶ 1–3. Plaintiff does not offer any evidence to the contrary, rather she argues that the hiring decision is irrelevant to her claim.[29] Though the Court realizes that plaintiff is not attempting to adjudicate her failure to get a job, but rather wants a review of the OPM report and a name-clearing hearing, the Court does not agree that the hiring decision is irrelevant to plaintiff's APA claim. Rather, it is a jurisdictional prerequisite to stating a claim under the APA. *See DRG Funding Corp. v. Secretary of Housing and Urban Devel.,* 76 F.3d 1212, 1214 (D.C.Cir.1996). Since plaintiff has proffered no evidence that there was ever a final decision not to hire her, defendants are entitled to summary judgment on her APA claim.[30]

---

of Civil Procedure 8(a) because her 159–page complaint was not a short and plain statement. The Court, however, was hesitant to dismiss the claims of a *pro se* plaintiff (even though she is a lawyer) on Rule 8(a) grounds. Instead, the Court ordered further briefing on the remaining counts.

26. Defendants had not previously addressed these specific claims because plaintiff failed to clarify them until her last opposition, to which defendants did not have the opportunity to reply.

27. Plaintiff suggests in her complaint that the "final agency action" from which the time set forth in the statute should be counted was the OPM's response to her request that they amend her background file in 1991. The D.C. Circuit has previously rejected the idea that the last date of inquiry is the relevant date for statute of limitations purposes. *See Impro Prods.,* 722 F.2d at 850; *see also Mittleman I,* 773 F.Supp. at 450 n. 6.

28. The Court notes that plaintiff completely ignored defendants' statute of limitations defense in her pleadings and in her recent oral argument before the Court, other than arguing that defendants' statute of limitations defense should be disregarded because of the D.C. Circuit's *Harris* decision.

29. In fact, plaintiff has admitted in several pleadings that she was told early on that the reason she was not hired was because Horlick was leaving public service.

30. In an abundance of caution, the Court further notes that, though neither party raised the issue, plaintiff's APA claim in this case appears analogous to the APA claims plaintiff raised in Civil Action No. 86–1852. The Court dismissed plaintiff's APA claims in that case because the Court found that the CSRA and the Privacy Act were additional remedies provided by Congress to address plaintiff's situation, precluding APA review under § 704. *See* 5 U.S.C. § 704 (APA review

Similarly, even assuming that it was filed within the statute of limitations, plaintiff's Fifth Amendment claim, which relies on the Supreme Court's decision in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), cannot survive a motion for summary judgment. In order to fall under *Roth* and implicate a liberty interest, plaintiff must offer evidence that Commerce decided not to hire plaintiff, and that the decision in effect "ma[de] a charge against [her] that might seriously damage [her] standing and associations in [her] community." *See Roth*, 408 U.S. at 573. An injury to reputation alone does not constitute a deprivation of a liberty interest; the reputational injury must be linked to the failure to hire plaintiff in order to merit a hearing. *See Paul v. Davis*, 424 U.S. 693, 709–710, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (defamation perpetrated by a government official but "unconnected with any refusal to rehire" does not affect a liberty interest); *Lyons v. Barrett*, 851 F.2d 406, 410 (D.C.Cir. 1988); *Doe v. U.S. Department of Justice*, 753 F.2d 1092, 1110–1112 (D.C.Cir.1985). Plaintiff cannot argue that Commerce's failure to hire constituted "a charge against her" (condemning her for items contained in the OPM report) unless she can point to evidence that Commerce's decision was based on the OPM report. As previously discussed, plaintiff has presented no evidence, other than her own conjecture, that there was any such link. Thus, defendants are also entitled to summary judgment on the Fifth Amendment portion of plaintiff's fourth claim.

### B. Plaintiff's Fifth Claim (Fifth Amendment)

The Court also grants defendants' motion to dismiss the remaining portion of plaintiff's fifth claim. The claim arises out of an alleged "failure to adjudicate" plaintiff's background file when she did not get the Commerce job. Even assuming *arguendo* that defendants were required to give plaintiff notice of the reasons she was not hired and an opportunity to respond, their failure to meet such an obligation would have accrued in 1983, when plaintiff found out she did not get the Commerce job. The six-year statute of limitations for plaintiff's Fifth Amendment claim expired in 1989, four years before plaintiff filed her claim.

Moreover, the Court again notes that even if plaintiff had filed her case within the applicable statute of limitations, defendants would still be entitled to summary judgment. The "regulation" on which plaintiff relies in arguing that defendants did not comply with applicable regulations when they failed to grant her a hearing regarding the OPM report is the Federal Personnel Manual ("FPM"), Chapter, 732, Subsection 7–2(b) and 7–6(a).[31] In sum, the FPM requires that if an agency, as the result of an OPM investigation, makes an unfavorable decision or changes a tentative favorable placement or clearance decision to an unfavorable one, then the applicant is entitled to notice and an opportunity to respond to the OPM report. *See* FPM Ch. 732 §§ 7–2(b) & 7–6(a). Any "adjudication," (*i.e.*, an employment decision) based on an OPM report must be made within 90 days of receiving the report. *Id.* These provisions do not, however, apply to plaintiff's case because, as previously discussed, there is no evidence that an "adjudication" was ever made based on the OPM report.[32] Because plaintiff cites no regula-

---

only available for final agency action "for which there is no other adequate remedy"); *Mittleman I*, 773 F.Supp. at 448–49; *see also McGregor v. Greer*, 748 F.Supp. 881, 884 (D.D.C.1990).

**31.** Plaintiff argues that 5 C.F.R. § 732.301 (1996) also is an applicable regulation which defendants violated. This regulation contains language similar to that in the FPM. As far as the Court can discern from its research, however, this section of the C.F.R. was not in effect in 1983, when plaintiff says she was denied employment. Plaintiff cites no C.F.R. section in effect in 1983 which would apply to her situation, nor can the Court

find any. Even if § 732.301 did apply, however, plaintiff has failed to provide any evidence that an adverse determination was made by Commerce based on the OPM report.

**32.** Plaintiff alleged in her 1986 complaint that she was selected for the Commerce job and was told to report to work in November 1982. However she cites no evidence to support this allegation, not even her own sworn declaration that she was told she was selected for the job. Plaintiff cannot simply rely on an allegation in her complaint to support her theory that a tentative favorable decision to hire her was changed to an

tion which applies to her situation, defendants are entitled to summary judgment on the remainder of her fifth claim.[33]

## CONCLUSION

For the foregoing reasons, the Court grants summary judgment on the first five parts of plaintiff's Privacy Act claim in Civil Action No. 86–1852 and orders further briefing limited to the single remaining Privacy Act claim. The Court also dismisses the remaining claims in Civil Actions No. 92–1741 and 93–1869, thus concluding those cases. The Court denies plaintiff's motion to strike defendants' affirmative defenses in all three cases. The Court also denies plaintiff's motion to amend, motion for sanctions, motion to withdraw the Anderson Declaration, and motion to preclude defendants' reliance on the November 19, 1980, memorandum in Civil Action No. 86–1852. Finally, the Court denies plaintiff's motion to substitute defendant in Civil Action No. 93–1869. In accordance with Federal Rule of Civil Procedure 58, a separate order for each of the three cases accompanies this Opinion.

unfavorable one due to the OPM report. *See Celotex,* 477 U.S. at 327.

**33.** The Court further notes that plaintiff's motion to substitute Acting Secretary of Commerce Mary Good as a defendant in this case is denied as moot.